EASTERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT COURT

MARAL AGARUNOVA,
Individually and on Behalf of All Others Similarly Situated,

                              Plaintiff,

                v.

THE STELLA ORTON HOME CARE AGENCY, INC.

                              Defendant,

Case No. 16-CV-638 (MKB)(RLM)

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

FORD & HARRISON LLP
Philip K. Davidoff
60 East 42nd Street, 51st Floor
New York, NY  10065
(212) 453-5900
(212) 453-5959 (facsimile)
Attorneys for Defendant

Defendant The Stella Orton Home Care Agency, Inc. (hereinafter "Stella Orton") respectfully submits this memorandum of law in support of its motion to dismiss various New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA") claims in the Second Amended Complaint ("SAC")[1] of Maral Agarunova ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") with prejudice in their entirety.

## PRELIMINARY STATEMENT

Defendant The Stella Orton Home Care Agency, Inc., a New York not-for-profit corporation, provides homecare services to Medicaid-eligible individuals who are medically or physically disbled and the elderly.[2]

By this motion, Defendant seeks dismissal of several of Plaintiff's claims in her SAC on the following grounds: (1) per its exemption from wage orders issued by the New York State Commissioner of Labor, Plaintiff's acknowledgement that she was paid at least "straight time" wages for all hours worked fully satisfies Stella Orton's NYLL obligations; (2) per its exemption from wage orders issued by the New York State Commissioner of Labor, Stella Orton has no "spread of hours" pay obligations under the NYLL; (3) there is no private right of action under the NYLL's

---

[1] Plaintiff filed her initial Complaint on February 5, 2016. Plaintiff filed her First Amended Complaint on September 5, 2017, in which she first asserted claims of a collective/class-wide nature. Subsequently on October 20, 2017, Plaintiff filed her SAC, to which the instant motion is directed.

[2] It is a matter of public record that Stella Orton was formed in 1982 pursuant to the New York State Not-for-Profit Corporation Law ("N-PCL") (*See* Ex. A to Declaration of Philip K. Davidoff, dated November 13, 2017 (hereinafter "Davidoff Decl."), for charitable purposes and remains registered as a public charity with the New York State Charities Bureau (*See* Ex. B to Davidoff Decl.). The promotion of public health has been expressly recognized as a charitable purpose in New York State. *See also Matter of Farm Sanctuary v. Patton*, 221 App.Div.2d 67, 68 (3d Dep't 1996).

It is also a matter of public record that Stella Orton is a tax exempt not-for-profit charitable organization under Internal Revenue Code ("IRC") §501(c)(3). (*See* Ex. C to Davidoff Decl.) To be tax exempt under §501(c)(3) of the IRC, "an organization must be organized and operated exclusively for exempt purposes set forth in section 501(c)(3), and none of its earnings may inure to any private shareholder of individual." *Id.* This definition is consistent with that of a "non-profitmaking institution" under applicable New York laws and indeed New York recognizes the tax exemption granted by the Internal Revenue Service. It is well-settled that the promotion of health, and specifically home care services, is in the general law of charity deemed beneficial to the community as a whole and therefore "charitable" under IRC § 501(C)(3).

Wage Theft Prevention Act ("WTPA") for failure to provide annual wage notices; (3) there is no private right of action for violation of the NYLL's "frequency of payment" provisions, and in any event as a matter of law Stella Orton satisfied its NYLL obligations related to timeliness and frequency of pay; (4) Plaintiff fails to state a cause of action for violation of FLSA's "prompt payment" requirement; and (5) Plaintiff fails to state a cause of action for inaccurate wage statements under the WTPA.

## PLAINTIFF'S ALLEGATIONS RELEVANT TO THIS MOTION

Plaintiff was employed as a home care aide by Stella Orton from in or around 2008 until April 2015. (SAC ¶ 10.) Plaintiff alleges that she typically worked in excess of 40 hours per week (SAC ¶ 26), and that she wrongfully was paid "straight time" for her overtime hours instead of receiving overtime compensation at one and one-half times her regular rate of pay -- $10.00 per hour (SAC ¶ 25) -- for hours worked in excess of forty hours per week (SAC ¶¶ 28; Counts III and IV). Further, Plaintiff alleges that Stella Orton violated the NYLL be failing to provide "spread of hours" pay for split shifts and/or shifts in excess of 10 hours in a day (SAC ¶¶ 42, 43; Count V). Plaintiff also alleges that Stella Orton violated the NYLL be failing to provide her with annual wage notices required by Section 195(1) of the WTPA (SAC ¶¶ 46; Count VII) and accurate wage statements required by Section 195(3) of the WTPA (SAC ¶ 45; Count VIII). Finally, Plaintiff alleges that Stella Orton violated Section 191(a)(1) of the NYLL regarding "timeliness and frequency of pay" by not paying Plaintiff, an alleged "manual worker," on a "weekly basis with no more than a 7-day lag" (SAC ¶ 48; Count VI), and that such pay practices also violated FLSA's "prompt payment" requirement (SAC ¶¶ 49, 51; Count II).

---

*See* Rev. Rul. 72-209, 19772-1 C.B. 148 (activities of corporation "formed to provide low cost home health care on a non-profit basis to the people of the community are 'charitable' under 'the general law of charity' and IRC § 501(C)(3)").

2

For the reasons discussed below, Plaintiff's Counts II, III, IV, V, VI, VII and VIII must be dismissed as a matter of law.[3]

## ARGUMENT

**I.    STANDARD OF REVIEW**

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a plausibility standard, which is guided by "[t]wo working principles." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). First, although the Court must accept all of the allegations in the Complaint as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555); *accord Harris,* 572 F.3d at 72. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir.1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–153 (2d Cir.2002); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773

---

[3] While Stella Orton does not seek dismissal of Plaintiff's FLSA overtime claim by this motion, Stella Orton submits that Plaintiff's claim is fatally deficient in various respects and further that collective action treatment under 29 U.S.C. §216(b) is inappropriate in this action.

3

(2d Cir.1991).[4]

## II. PLAINTIFF'S NYLL CLAIMS MUST FAIL AS A MATTER OF LAW

Counts III, IV, V, VI, VII and VIII in Plaintiff's SAC, for alleged violations of the NYLL (and its WTPA), are subject to dismissal because (1) Stella Orton has elected the option of non-coverage under wage orders issued by the Commissioner of Labor (Counts III, IV and V); (2) there is no private right of action for failure to provide annual wage notices under the (former) WTPA (Count VII); (3) Stella Orton's pay practices are fully compliant with the NYLL, including its timeliness and pay frequency provisions at NYLL § 191(a)(1) (Count VI); and (4) wage statements provided by Stella Orton to Plaintiff were fully compliant with NYLL § 195(3) (Count VIII).

### A. *NYLL Overtime Claim and Spread of Hours Claims Must Fail*

The NYLL does not contain any *statutory* provisions governing overtime compensation. *See Satish Deshpande v. TJH Medical Services, P.C.*, 52 A.D.3d 648; 861 N.Y.S.2d 697 (2d Dep't, 2008); *Ballard v Community Home Care Referral Serv.,* 264 A.D.2d 747, 695 N.Y.S.2d 130 (2d Dep't 1999). Rather, consistent with the NYLL's comprehensive statutory/regulatory scheme, the Commissioner of Labor has been empowered to determine pursuant to NYLL Sections 653 and 655,[5] whether some form of overtime compensation to employees is appropriate. Accordingly, the Commissioner of Labor has issued, *inter alia,* the Minimum Wage Order for Miscellaneous Industries and Occupations found at 12 NYCRR 142-2.2 and 142-2.3 ("Minimum Wage Order"), which contains provisions governing overtime compensation. *See* 12 N.Y.C.R.R. §§ 142-2.2, 142-

---

[4] In deciding a motion to dismiss, the Court may take judicial notice of public records. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004). The Court also may consider exhibits which are integral to the complaint. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

[5] NYLL § 653 specifically provides the Commissioner of Labor with the power to investigate the sufficiency of the minimum wage, and if the Commissioner is of the opinion that the minimum wage is insufficient, he must appoint a wage board to inquire into and report and recommend adequate minimum wages. In addition to making recommendations

4

2.3 (*See* Ex. D to Davidoff Decl.); *see also Ballard,* 264 A.D.2d at 747, 695 N.Y.S.2d at 131.[6]

However, both NYLL Section 652(3) and Section 142-1.1(b) of the Minimum Wage Order expressly provide that nonprofitmaking institutions that have elected the option to exempt themselves from coverage under the Minimum Wage Order, such as Stella Orton, are not covered by the Minimum Wage Order's provisions (hereinafter the "Option" or the "Exemption").

Specifically, Section 652(3)(b) of the NYLL provides:

> (b) Option available to non-profitmaking institutions. The provisions of *any wage order* issued under this article shall *not* apply, however, to any nonprofitmaking institution which *pays and continues to pay to each of its employees in every occupation a wage, exclusive of allowances, of not less than the minimum wage provided in subdivision one of this section*, . . . so long as, commencing six months after it was organized, or first employed such employees it paid and continues to pay such wage to each of its employees in every occupation, provided that such institution *certified under oath within six months* after it was organized or first employed such employees that it would pay and thereafter intended to pay such wage to each of its employees in every occupation and *provided further that all the provisions of this article have not become applicable to such institution by operation of paragraph (c) of this subdivision*.

In accordance with NYLL Section 652(3)(b), within six months of its formation as a non-profitmaking institution in 1982, Stella Orton timely elected the Option. (*See* Ex. E to Davidoff Decl.) Further, Stella Orton paid Plaintiff (and all its employees) not less than the minimum wage set forth in NYLL Section 652(a). Specifically, in her SAC Plaintiff acknowledges that her rate of pay was $10.00 per hour (SAC ¶ 25); a rate at all times relevant to this action in excess of the

---

regarding minimum wages, the wage board may recommend such regulations as it deems appropriate with respect to, *inter alia*, overtime rates. *See* NYLL § 655(5)(b).

[6] Although there are no explicit statutory provisions governing overtime compensation under the New York Minimum Wage Act, New York and federal courts have recognized a cause of action for unpaid overtime wages against corporations pursuant to the Minimum Wage Order. *See, e.g., Robles v. Copstat Sec., Inc.,* 2009 U.S. Dist. LEXIS 112003 (S.D.N.Y. 2009); *Diaz v. Electronics Boutique of America, Inc.*, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. 2005) ("the Second Circuit Court of Appeals and other New York District Courts have verified that overtime claims may be brought pursuant to NYLL 650 et seq. and that implementing regulation 12 NYCRR § 142-2.2 carries the force of the law").

statutory minimum wage.[7] Finally, "all the provisions of Article 19 have not become applicable" to Stella Orton by operation of NYLL Section 652(3)(c). Indeed, the New York State Department of Labor has confirmed on several occasions, *including as recently as October 25, 2017*, that Stella Orton "has been and is currently" exempt from wage orders promulgated by the Commissioner of Labor. (*See* Ex. F to Davidoff Decl.).[8] These facts are irrefutable, and are not disputed by Plaintiff in the SAC.

Nonetheless, based on Plaintiff's counsel's representations to the Court at the pre-motion conference and the allegations in Plaintiff's (post-conference) SAC, Plaintiff evidently seeks to challenge the applicability and effect of Stella Orton's Exemption based on her allegations that Stella Orton is actually "for-profit" corporation and thus not entitled to the Exemption. In this regard, Plaintiff's SAC contains several wildly incorrect, speculative and conclusory allegations: specifically, "upon information and belief, Stella Orton is a for-profit enterprise that is not operated exclusively for religious, charitable or educational provisions[]" and "upon information and belief, Stella Orton's net earnings inure to the benefit of a private shareholder(s) or individual." (SAC ¶ 14.)[9] However, such allegations are nothing more than a red herring and of no legal consequence in the instant action. The NYLL's comprehensive statutory and regulatory scheme makes this clear. Once a non-profitmaking institution such as Stella Orton elects the Option pursuant to NYLL

---

[7] During the relevant period of this action "subdivision one of section 652" provided that the statutory minimum wage was, in relevant part: $7.15 on and after January 1, 2007, or, if greater, such other wage as may be established by federal law pursuant to 29 U.S.C. section 206 or its successors." Subsequently, on July 24, 2009, the minimum wage was increased to $7.25, to $8.00 per hour on and after December 31, 2013 and to $8.75 per hour on and after December 31, 2014.

[8] There is no allegation in this action that Defendant did not meet the Section 652(3)(b) conditions for the election of the Option, including that it pay its employees, including Plaintiff, at least the minimum wage for all hours worked. To the contrary, Plaintiff alleges that her regular rate of pay was $10.00 per hour. (*See* SAC ¶ 25.) Thus, at all times during her employment by Stella Orton, Plaintiff's rate of pay exceeded the statutory minimum wage.

[9] Plaintiff attempts to support these baseless claims by including a series of specious allegations that are utterly immaterial and irrelevant to the issues properly before the Court. (SAC ¶¶ 15-17.)

6

Section 652(3)(b), NYLL Section 652(3)(c) sets forth the *exclusive* manner in which it can be terminated. *See Sohn v. Calderon,* 78 N.Y.2d 755, 767 (1991) (when statutory and regulatory scheme evinces legislative intent to have matters determined by agency, in first instance, agency has original exclusive jurisdiction). Section 652(3)(c) of the NYLL provides:

> (c) **Termination of Option**. All the provisions of this article, including all of the provisions of any wage order issued thereunder which, but for the operation of paragraph (b) of this subdivision, would apply to any non-profitmaking institution, ***shall become fully applicable to such institution*** sixty days after such institution files a notice with the commissioner requesting that the provisions of such wage order apply to it, or ***immediately upon the issuance of an order by the commissioner finding that such institution has failed to pay the wages provided in paragraph (b) of this subdivision***, but in no event shall any such order discharge the obligation of such institution to pay the wages ***provided by paragraph (b) of this subdivision for any period prior to the issuance of such order***. (Emphasis added.)

In this regard, the provisions of the Minimum Wage Order, which *alone* gives rise to any overtime and "spread of hours" obligations under the NYLL, "have not become applicable to [it] by operation of paragraph (c) of this subdivision." With respect to the *only* two statutory grounds for termination of the Exemption, Stella Orton has neither (1) "filed a notice with the commissioner requesting that the provisions of such wage order apply to it," nor (2) has it been subject to an order by the Commissioner of Labor "finding that [it] has failed to pay the wages provided in *paragraph (b)* of this subdivision [*i.e.,* at least the basic minimum wage]."

Furthermore, in accordance with the NYLL's comprehensive statutory scheme and the Commissioner's substantial and exclusive delegated powers in this area, the Commissioner of Labor has promulgated a broad regulatory framework applicable to nonprofitmaking institutions which have, like Stella Orton, elected the Option in lieu of coverage under the Minimum Wage Order. (*See* 12 NYCRR Part 143; annexed as Ex. G to Davidoff Decl.). Of relevance here are the following provisions:

7

§ 143.2 Election by nonprofitmaking institutions.

An election by a nonprofitmaking institution to pay each of its employees in every occupation a wage, exclusive of allowances, of not less than the amount specified in subdivision 1 of section 652 of the Labor Law shall be made on a form furnished for this purpose by the commissioner.

§ 143.3 Notice requesting application of minimum wage orders.

A nonprofitmaking institution which, having elected to pay to each of its employees in every occupation a wage, exclusive of allowances, of not less than the statutory minimum wage, wishes to change its election and become subject to minimum wage order coverage shall notify the commissioner in writing, over the signature of an authorized official thereof:

(a) that it requests to have all the provisions of applicable minimum wage orders apply to its employees beginning 60 days from the date of the notice; and

(b) that until such 60th day the institution will continue to pay wages in accordance with the election in effect until such date.

§ 143.4 Revocation of exemption.

(a) An exemption, elected by a nonprofitmaking institution when it certified under oath to the commissioner to pay to each of its employees in every occupation a wage, exclusive of allowances, of not less than the statutory minimum hourly rate may be revoked by order of the commissioner if he finds:

(1) that the certification contained misrepresentations; or

(2) that the nonprofitmaking institution has violated the provisions of article 19 applicable to it.

(b) No such order of the commissioner shall be issued unless the nonprofitmaking institution is given an opportunity to be heard by the commissioner. A record will be made of such hearing.

Again, applying the statutory and regulatory framework in this action, there can be no doubt that Stella Orton elected the Option on the form furnished for this purpose by the Commissioner of Labor in accordance with 12 NYCRR § 143.2 and that the Department of Labor has confirmed that

the Exemption "has been and is currently in effect" for Stella Orton.[10]

Once elected, the Exemption can be terminated *only* (1) when Stella Orton notifies the Commissioner of Labor, in writing, that it wishes to change its election and become subject to minimum wage order coverage (NYLL §652(3)(c); 12 NYCRR § 143.3), which Stella Orton has not done, or (2) when such exemption is "revoked" by order of the Commissioner of Labor (652(3)(c); 12 NYCRR § 143.4). With respect to the latter condition precedent to Minimum Wage Order application – *i.e.,* revocation by order of the Commissioner of Labor -- the regulations are unambiguous: the Commissioner of Labor may revoke the Exemption *only* (1) if Stella Orton's certification "contained misrepresentations," or (2) Stella Orton "has violated the provisions of article 19 applicable to it." Further, the implementing regulations unambiguously state that "[n]o such order of the commissioner shall be issued unless the nonprofitmaking institution is given an opportunity to be heard *by the commissioner* and that a "record will be made of such hearing." *See* 12 NYCRR § 143.4(b).[11]

Respectfully, the issue before this Court is *not (and cannot be)* whether Stella Orton is a "for-profit" corporation, as conclusorily alleged by Plaintiff. Indeed, Stella Orton's status as a New York not-for-profit charitable corporation is a matter of public record and the continuing validity of such status for purposes of Stella Orton's Exemption from coverage under the Minimum Wage Order (or otherwise) is not subject, at least initially (if not permanently), to adjudication in this action. Rather, Stella Orton submits for purposes of this motion that the issue before the Court necessarily must be whether Stella Orton *elected* the Option to forego Minimum Wage Order

---

[10] The statutory and regulatory *sine qua non* for the Exemption becoming effective was Stella Orton's *election* of the Option and its acceptance by the Commissioner of Labor in 1982.

[11] As demonstrated above, Stella Orton's Exemption has not been revoked by the Commissioner of Labor, nor is there an allegation in the Complaint to the contrary.

9

coverage. If so, and Stella Orton submits that its election of the Option is neither plausibly in dispute nor subject to a contrary allegation in the SAC, any potential issues concerning Stella Orton's alleged failure to adhere to the NYLL (or other statutory) requirements applicable to not-for-profit corporations, such as whether it operated "exclusively for charitable purposes" or its "net earnings inured to the benefit of a private shareholder(s) or individual" -- that is, whether Stella Orton "has violated the provisions of [NYLL] article 19 applicable to it" (*see* § 12 NYCRR 143.4) -- such that revocation of the Exemption is warranted is left solely to be determined in the first instance by the Commissioner of Labor after a full and fair hearing.[12]

Plaintiff's invitation to this Court to disregard the NYLL's comprehensive statutory and regulatory framework, and usurp the legislatively-granted powers of the Commissioner of Labor, must be summarily rejected. Stella Orton submits that this is particularly true where, as here, the matters in dispute are entirely a creation of the Commissioner of Labor in the first place; namely, the Commissioner's promulgation of overtime compensation and spread of hours obligations by issuance of the Minimum Wage Order, neither of which are statutorily compelled, as well as the application of the implementing regulations applicable to non-profitmaking institutions, including those concerning revocation of the Exemption.

Finally, it should also be noted that the consequences of any such revocation or loss of the Exemption, even were it to be ordered by the Commissioner of Labor, would be of no benefit to Plaintiff's overtime or spread of hours claims in this action. By statute, the effect of any such revocation or loss of the Exemption is *prospective* only. NYLL Section 653 does not contemplate *retrospective* Minimum Wage Order coverage or liability for loss of the Exemption. Rather, it states

---

[12] In the event that either party then seeks to challenge the Commissioner's Order following a required hearing, any such review must be conducted pursuant to an Article 78 proceeding under New York Law.

10

that the provisions the Minimum Wage Order would apply to any non-profitmaking institution "immediately upon the issuance of an order by the commissioner finding that such institution has failed to pay the wages provided in paragraph (b) of this subdivision, but in no event shall any such order discharge the obligation of such institution to pay the wages *provided by paragraph (b) of this subdivision for any period prior to the issuance of such order.*" Where, as here, Defendant has indisputably paid at least the statutory minimum wage to Plaintiff, there can be no backpay damages under the NYLL and Section 652(3)(c).

In sum, Stella Orton (and its employees) have been and remain exempt from coverage under the Minimum Wage Order by virtue of NYLL § 652(3), 12 NYCRR § 142-1.1(b) and 12 NYCRR Part 143. Accordingly, the Minimum Wage Order's overtime and "spread of hours" provisions -- the sole source of Plaintiff's NYLL overtime and "spread of hours" claims in this action -- do not apply and those claims must fail as a matter of law. *See Ciubotaru v. Home Attendant Vendor Agency*, Index No. 3789/2013 (N.Y. Sup. Ct., Kings Cty., July 18, 2013).

  B. *Plaintiff's NYLL "Timeliness and Frequency of Pay" Claims Must Fail (Count VI)*

Plaintiff alleges that as a "manual worker," NYLL § 191(1)(a)(i) requires that she "be paid weekly and that wages be paid with no more than a 7-day lag -- *i.e.*, not later than seven calendar days after the end of the week in which the wages are earned." (SAC, ¶ 48.)

Under the NYLL, an employer will be liable to a plaintiff for *unpaid wages* for hours of work a plaintiff has completed. *See Chen v. JP Standard Constr. Corp.*, No. 14 Civ. 1086 (MKB) (RLM), 2016 U.S. Dist. LEXIS 36464 (E.D.N.Y. Mar. 18, 2016) (citing N.Y. Lab. Law § 191(1)(a)(i)), *R&R adopted by* No. 14 Civ. 1086 (MKB) (RLM), 2016 U.S. Dist. LEXIS 63007 (E.D.N.Y. May 12, 2016). However, Plaintiff here does not allege that payment of wages was withheld, but rather that Defendant's payroll practices essentially resulted in a "stand-alone" violation of NYLL

11

§191(1)(a)(i)'s "frequency of payment" provisions. However, recovery of damages hinges solely on *unpaid wages* as "the NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment and record-keeping." *See Hussain v. Pakistan Intl. Airlines*, No. 11-CV-932 (ERK) (VVP), 2012 BL 279778 (E.D.N.Y. Oct. 23, 2012).

In any case, even if there were provisions for private recovery of damages under NYLL § 191(1)(a)(i) for such technical violations, Plaintiff's "timeliness and frequency of pay" claim nonetheless must fail as a matter of law. NYLL § 191(1)(a)(i) contains a proviso, *which Plaintiff omits in the SAC*, that a "manual worker" of a "non-profitmaking organization," such as Stella Orton, shall be paid in accordance with the agreed terms of employment, *but not less frequently than semi-monthly*." (Emphasis added.) Plaintiff's allegations in paragraphs 52 and 53 of the SAC, which comport with § 191(1)(a)(i)'s bi-monthly proviso for non-for-profit employers, make clear that Stella Orton's pay practices in this regard complied with NYLL.

    C.    *Annual Wage Notice Claim Under the WTPA Must Fail (Count VII)*[13]

Plaintiff's WTPA annual wage notice claim must also be dismissed as a matter of law. It is well-settled that a private right of action exists under the WTPA *only* for failure to provide required WTPA notices at the time of an employee's hire.[14] *See, e.g. Guaman v. Krill Contracting, Inc.*, 2015 WL 3620364 (E.D.N.Y. 2015) (finding that plaintiff whose employment predated April 9, 2011 ineligible for recovery); *Guan Ming Lin v. Benihana New York Corp.,* No. 10–CV–1335 (RA)(JCF), 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted,* 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) (same). Plaintiff's WTPA claim, which concerns annual wage

---

[13] Similarly, Plaintiff's class/collective allegations fail because she cannot establish any entitlement to relief on an individual basis, which moots any possibility of class-wide claims or relief.

[14] Because the WTPA became effective on April 9, 2011, Plaintiff, who was hired in 2008 (SAC, ¶ 10), cannot state a claim under the WTPA for failure to provide WTPA notice at her time of hire.

notices *subsequent to her time of hire* fails to state a cause of action. There is no private cause of action for failure to provide the annual wage notices that formerly were required by NYLL Section 195 from 2011 through 2015.[15] *See, e.g., Krupinski v. Laborers E. Region Org. Fund*, No. 16 CV 9923, 2017 WL 3267764, at *6 (S.D.N.Y. July 31, 2017) (explaining that "Section 198 provides only the Commissioner of Labor, not employees themselves, with a cause of action to enforce [Section 195(1)(a)]"); *Yuquilema v. Manhattan's Hero Corp.*, No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 26, 2014), *adopted by* 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) (observing that "[o]ddly, the NYLL extends this private cause of action to employees whose employer fails to provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years").

        D.      *Failure to Provide Accurate Wage Statements Claim Must Fail (Count VI)*

Finally, insofar as Plaintiff's claim concerning "failure to provide accurate wage statements" under NYLL Section 195(3) is based solely on Plaintiff's allegation that she was paid a "straight time" rate for hours over 40 in a workweek, rather than overtime compensation at one and one-half times her regular rate of pay (SAC ¶¶ 28, 45) -- a basis that itself cannot withstand dismissal (*see* Point II A, *supra*) -- this claim necessarily must also fail as a matter of law.

**III.    PLAINTIFF'S FLSA "PROMPT PAYMENT" CLAIM MUST FAIL (COUNT II)**

The FLSA does not expressly address the timing of wage payments. However, courts have concluded that the FLSA is violated when payment for wages earned is not "promptly" made on the payday on which such payment is normally made and there is an "unreasonably long delay" in making payment. *See Rogers v City of Troy, N.Y.*, 148 F.3d 52, 60 (2d Cir. 1998) ("[T]he

---

[15] The annual wage notice requirement was rescinded in February 2015. NYLL § 195(1)(a), 2014 N.Y. Laws ch. 537 § 1 (effective Feb. 27. 2015).

FLSA requires prompt payment of the minimum wage. Timeliness of payment under the Act is determined with respect to the *regular payday* on which an employer pays its employees.") (Emphasis added); *see also Gorski v. State of New York*, 23 Misc. 3d 327, 874 N.Y.S.2d 347 (Ct. Cl. 2008) (imposition of "standard of reasonableness" in *Rogers* "clearly indicates that however strictly the FLSA may be applied to regularly scheduled wage payments . . . it is not to be so strictly construed with respect to lagged pay.")

Here, however, Plaintiff takes issue with the payroll schedule adopted by Stella Orton and the alleged "7-day lag time" resulting from Stella Orton's practice of paying employees every other Friday. (SAC ¶¶ 52, 53.) Plaintiff does not (and cannot) allege, as she must, that she not was paid "on the payday on which such payment is normally made"; that is, that she was not paid at the time of "regularly scheduled wage payments," Accordingly, Plaintiff's "prompt payment" claim must fail for this reason alone.

Moreover, even if one were to apply a "reasonableness" standard with respect to the propriety of the "7-day lag time" alleged by Plaintiff, it would fall far short as a matter of law of an "unreasonably long delay." Indeed, even if Stella Orton were not a non-profitmaking institution permitted under NYLL § 191(1)(a)(i) to pay its manual workers on a semi-monthly basis, the fact that that section also permits payments on a semi-monthly basis for "manual workers" of large "for-profit" institutions (upon application to the Department of Labor), objectively demonstrates the absence of "unreasonably long delay" for purposes of the FLSA. It defies logic that a payroll practice generally recognized as permissible under the NYLL, could constitute an unlawful "unreasonably long delay." *Cf. Cuzco v. Orion Builders, Inc.,* 262 F.R.D. 325, 16 WH Cases2d 540 (S.D.N.Y. 2009) ("no authority for the proposition that an employer's failure to structure his pay schedule to comply with a state-mandated [manual worker] pay-period also constitutes a violation of

14

the FLSA's prompt payment requirement").

In light of the foregoing, Stella Orton submits that Plaintiff's Counts II, III, IV, V, VI, VII and VIII in the SAC should be dismissed and she should not be afforded an opportunity to amend her SAC. Where it appears, as here, that granting leave to amend is "unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam). Therefore, Stella Orton submits those claims should be dismissed with prejudice.

## CONCLUSION

For all the foregoing reasons, Stella Orton's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, should be granted with such other relief as the Court deems just and proper.

Respectfully submitted

Dated: New York, New York
November 13, 2017

FORD & HARRISON LLP

By: /s/ Philip K. Davidoff

Philip K. Davidoff
60 East 42nd Street, 51st Fl.
New York, New York 10165
Tel: 212-453-5900
Fax: 212. 453. 5959
E-mail:pdavidoff@fordharrison.com

WSACTIVELLP:9444886.2

15