**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARAL AGARUNOVA,
Individually and on Behalf of All Others
Similarly Situated,

                               Plaintiff,

           v.

THE STELLA ORTON HOME CARE
AGENCY, INC.,

                        Defendant.

Case No.: 16 Civ. 638 (MKB) (RLM)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS THE SECOND AMENDED CLASS AND <u>COLLECTIVE ACTION COMPLAINT</u>**

**WITTELS LAW, P.C.**
Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Attorneys for Plaintiff and the Class*

Dated: December 15, 2017

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.      PLAINTIFF DISPUTES THAT DEFENDANT IS EXEMPT FROM NYLL
WAGE ORDERS, AND  DISMISSAL OF PLAINTIFF'S CLAIMS PRIOR
TO DISCOVERY IS IMPROPER ..............................................................................3

      A.     The Legal Standard for Assessing Stella Orton's Claimed Exemption
Pursuant to NYLL § 652(3)…………………………………………………..4

          1.   NYLL § 652(3) Requires Satisfaction of Three Requirements……….4

          2.   Stella Orton's Claimed Exemption Is to Be Narrowly Construed……5

          3.   Stella Orton Bears the Burden of Proving Exempt Status……………6

      B.     Assessing Stella Orton's Claimed Exemption is Premature at this Stage........6

      C.     Even If It Were Considered, Stella Orton Cannot and Did Not Show
Compliance with NYLL § 652(3) ...................................................................9

          1.   Stella Orton's Claimed Exemption Is Facially Deficient…..................9

          2.   Plaintiff Alleges that Stella Orton Is a For-Profit Company and
Is Therefore Not Entitled to Exemption from New York's Wage
Orders…………………………………………………………………...11

              a.   The Allegations in the Complaint Create a Reasonable
Inference That Stella Orton Does Not Meet the NYLL's
Definition of a Non-Profitmaking Institution………………..11

              b.   Additional Evidence of Defendant's Failure to Operate as a
Bona Fide Non-Profitmaking Institution……………………13

              c.   Stella Orton Fails to Rebut Plaintiff's Allegation That It Is
a For-Profit Business…..…………………………………..13

      D.     The Court Has Jurisdiction to Rule on the NYLL § 652(3) Exemption ........14

II.    PLAINTIFF IS ENTITLED TO RECOVER FOR DEFENDANT'S NYLL
       § 191 AND 195 VIOLATIONS RELATED TO TIMELINESS/FREQUENCY
       OF PAYMENT, ANNUAL WAGE NOTICES, AND WAGE STATEMENTS ........18

       A.    Plaintiff Is Entitled to Recover for Defendant's NYLL § 191(1)(a)(i)
             Frequency/Timeliness of Payment Violations ................................................18

       B.    Plaintiff Is Entitled to Recover for NYLL § 195(1) Wage Notice
             Violations ......................................................................................................20

       C.    Plaintiff Is Entitled to Recover for NYLL § 195(3) Wage Statement
             Violations ......................................................................................................23

III.   PLAINTIFF'S FLSA PROMPT-PAYMENT CLAIM SHOULD BE
       SUSTAINED ..............................................................................................................24

CONCLUSION .......................................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright*,
468 U.S. 737 (1984) .............................................................................................. 14

*Andryeyeva v. N.Y. Health Care, Inc.*,
153 A.D.3d 1216 (N.Y. App. Div. 2017) ............................................................... 8

*Andryeyeva v. N.Y. Health Care, Inc.*,
45 Misc. 3d 820 (N.Y. Sup. Ct. 2014) .................................................................... 8

*Bazignan v. Team Castle Hill Corp.*,
2015 WL 1000034 (S.D.N.Y. March 5, 2015) ..................................................... 23

*Belizaire v. RAV Investigative & Sec. Servs.*,
61 F. Supp. 3d 336 (S.D.N.Y. 2014) .................................................................... 19

*Chen v. Major League Baseball*,
2014 WL 1230006 (S.D.N.Y. March 25, 2014) ..................................................... 6

*Clougher v. Home Depot U.S.A., Inc.*,
696 F. Supp. 2d 285 (E.D.N.Y. 2010) .................................................................... 5

*Conzo v. City of New York*,
667 F. Supp. 2d 279 (S.D.N.Y. 2009) ............................................................ 24, 25

*Copper v. Cavalry Staffing, LLC*,
132 F. Supp. 3d 460 (E.D.N.Y. 2015) ............................................................ 22, 23

*Cortez v. 8612 Best Coffee Shop Inc.*,
2015 WL 10709830 (E.D.N.Y. Aug. 14, 2015) ................................................... 21

*Cuzco v. F & J Steaks 37th St. LLC*,
2014 WL 2210615 (S.D.N.Y. May 28, 2014) ...................................................... 20

*Cuzco v. Orion Builders, Inc.*,
262 F.R.D. 325 (S.D.N.Y. 2009) .......................................................................... 25

*Dejesus v. HF Management Services, LLC*,
2012 WL 5289571 (E.D.N.Y. Oct. 23, 2012) ........................................................ 6

*DeJesus v. HF Mgmt. Servs., LLC*,
726 F.3d 85 (2d Cir. 2013) ..................................................................................... 6

*Diaz v. Elecs. Boutique of Am., Inc.*,
2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ..................................................... 15

*Dougherty v. Carver Federal Sav. Bank*,
112 F.3d 613 (2d Cir. 1997) ................................................................................. 17

*Fulani v. League of Women Voters Educ. Fund*,
   882 F.2d 621 (2d Cir. 1989) ..................................................................................... 14

*Grand Light & Supply Co. v. Honeywell, Inc.*,
   771 F.2d 672 (2d Cir. 1985) ..................................................................................... 22

*Humphrey v. RAV Investigative & Sec. Servs. Ltd.*,
   2016 WL 7190073 (S.D.N.Y. Nov. 29, 2016) ........................................................... 19

*Inclan v. New York Hospitality Grp., Inc.*,
   95 F. Supp. 3d 490 (S.D.N.Y. 2015) ......................................................................... 24

*Khereed v. West 12th Street Restaurant Group LLC*,
   2016 WL 590233 (S.D.N.Y. Feb. 11, 2016) .............................................................. 23

*Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB*,
   631 F.3d 23 (2d Cir. 2010) ....................................................................................... 21

*Lopez-Serrano v. Rockmore*,
   132 F. Supp. 3d 390 (E.D.N.Y. 2015) ....................................................................... 19

*Mlodozeniec v. Worthington Corp.*,
   189 N.Y.S.2d 468 (App. Div. 1959) ............................................................................ 5

*Moreno v. Future Care Health Servs., Inc.*,
   61 N.Y.S.3d 589 (App. Div. 2017) .............................................................................. 8

*Padilla v. Manlapaz*,
   643 F. Supp. 2d 302 (E.D.N.Y. 2009) ......................................................................... 8

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ..................................................................................... 6, 7

*Pray v. Long Island Bone & Joint, LLP*,
   2016 WL 9455557 (E.D.N.Y. Aug. 11, 2016) ............................................................. 5

*Radich v. Council of City of Lackawanna*,
   462 N.Y.S.2d 928 (App. Div. 1983) ............................................................................ 5

*Rogers v. City of Troy*,
   148 F.3d 52 (2d Cir. 1998) ....................................................................................... 24

*Rossi v. Flying Horse Farm, Inc.*,
   16 N.Y.S.3d 316 (App. Div. 2015) .......................................................................... 5, 6

*Safonova v. Home Attendant Vendor Agency, Inc.*,
   (N.Y. Sup. Ct. Sept. 9, 2016) ..................................................................................... 9

*Settlement Home Care v. Indus. Bd. of Appeals of Dep't of Labor*,
   542 N.Y.S.2d 346 (App. Div. 1989) ............................................................................ 5

*Severino v. 436 W. LLC*,
   2015 WL 12559893 (S.D.N.Y. Mar. 19, 2015) ......................................................... 20

iv

*Sheehy v. Big Flats Community Day, Inc.*,
   543 N.Y.S.2d 18 (1989) ..................................................................................................... 22

*Shin Won Kang v. Inno Asset Dev., LLC*,
   2011 WL 1674554 (E.D.N.Y. Jan. 28, 2011) .................................................................. 18

*Smellie v. Mount Sinai Hosp.*,
   2004 WL 2725124 (S.D.N.Y. Nov. 29, 2004) ....................................................... 7, 17, 18

*Sorrells v. United States*,
   287 U.S. 435 (1932) .......................................................................................................... 21

*Suraci v. Mucktar*,
   725 N.Y.S.2d 155 (N.Y. Civ. Ct. 2000) ........................................................................... 15

*Tokhtaman v. Human Care, LLC*,
   52 N.Y.S.3d 89 (App. Div. 2017).......................................................................................8

*Troshin v. The Stella Orton Home Care Agency, Inc.*,
   (N.Y. Sup. Ct. Nov. 4, 2016) ..............................................................................................8

*Vazquez v. Sichel*,
   814 N.Y.S.2d 482 (N.Y. Civ. Ct. 2005) ........................................................................... 15

*Whitman v. Am. Trucking Associations*,
   531 U.S. 457 (2001) .......................................................................................................... 16

*Wing Kwong Ho v. Target Const. of NY, Corp.*,
   2011 WL 1131510 (E.D.N.Y. Mar. 28, 2011).................................................................. 19

*Yuquilema v. Manhattan's Hero Corp.*,
   2014 WL 4207106 (S.D.N.Y. Aug. 20, 2014)................................................................... 21

*Zhi Yong Zheng v. Nanatori Japanese Rest. Corp.*,
   2017 WL 758489 (E.D.N.Y. Jan. 9, 2017)....................................................................... 20

*Zhou v. Aberdeen Dim Sum & Seafood Inc.*,
   2016 WL 6238651 (S.D.N.Y. Oct. 24, 2016).................................................................... 21

**Statutes**

NYLL § 191 ............................................................................................................................. 18, 25

NYLL § 191(1)(a)(i) ............................................................................................................... 18, 19

NYLL § 195(1) ............................................................................................................................. 22

NYLL § 195(3) ............................................................................................................................. 23

NYLL § 198(1-b)..................................................................................................................... 21, 23

NYLL § 650 *et seq.*..................................................................................................................... 15

NYLL § 651(8) ..................................................................................................... *passim*

NYLL § 652 ................................................................................................................ 16

NYLL § 652(3) ..................................................................................................... *passim*

NYLL § 652(3)(a) .................................................................................................. 11, 17

NYLL § 652(3)(b) ........................................................................................... 5, 7, 11, 16

NYLL § 663(1) ........................................................................................................... 16

NYLL § 663(2) ........................................................................................................... 16

NYLL §191(1) ............................................................................................................ 19

NYLL § 652(3)(c) ............................................................................................. 15, 16, 17

**Regulations**

12 NYCRR § 142 ......................................................................................................... 4

12 NYCRR § 142-2.2 ............................................................................................. 3, 4, 16

29 C.F.R. § 778.106 .................................................................................................... 24

12 NYCRR § 142-2.4 ................................................................................................... 4

## INTRODUCTION

This class action challenges The Stella Orton Home Care Agency, Inc.'s ("Stella Orton" or "Defendant") policy of shorting its 1,200+ low-wage home care workers on their hard-earned pay. Second Amended Class and Collective Action Complaint ("SAC") ¶¶ 2, 25–39 (ECF No. 41). Plaintiff and the Class work extremely long hours, yet as their Stella Orton paystubs demonstrate, they are victims of systemic wage and hour violations. *Id*. ¶¶ 25–39.

The central issue on this motion is whether Stella Orton has established as a threshold matter that it is a bona fide non-profit organization exempt from New York overtime and related pay requirements. As set forth below, Defendant's claim fails for three main reasons: (1) Stella Orton's claimed exemption requires a factual inquiry into *inter alia* Defendant's pay, operational, and financial practices that cannot be resolved at the dismissal stage; (2) Stella Orton has made prior admissions that explicitly contravene its claimed exemption; and (3) the SAC clearly pleads facts showing that Stella Orton is not operated as a bona fide non-profit and is thus ineligible for any overtime exemption—as described in a preliminary report by a highly qualified CPA from a major New York accounting firm, Defendant's public filings show that it is likely Stella Orton is a for-profit company. Indeed, even before discovery these public filings cast serious doubt about whether Defendant is entitled to non-profit status.

Faced with these facts, Defendant attempts to distract. It asserts that the Court is required to condone its pay practices based on improperly executed form documents that have never been evaluated for accuracy. It also contends without support that the Court lacks jurisdiction to hear Plaintiff's challenge to Defendant's claimed charitable status. Yet it is Defendant's supposed non-profit status that undergirds its exemption defense. For these and other reasons the Court should give short shrift to Defendant's effort to obscure the issues currently before the Court.

1

Home care workers perform very difficult and essential work.  As noted in the U.S. Department of Labor's (the "USDOL") announcement of the new home care overtime rules, these workers "play a critical role in ensuring access to high-quality home care that many people need in order to remain healthy and independent in their communities, and they should be compensated fairly for this important work."  Declaration of J. Burkett McInturff ("McInturff Decl."), Ex. A, Press Release, USDOL (Sept. 17, 2013).  The home care industry has grown dramatically as more individuals choose home care over nursing homes.  *See id.*  (Of the estimated 1.9 million home care workers, "nearly all [are] currently employed by home care agencies.").  Yet "[d]espite this growth and the fact that direct care workers increasingly receive skills training and perform work previously done by trained nurses, direct care workers remain among the lowest paid in the service industry."  *Id.*  "Approximately 90 percent . . . are women, and nearly 50 percent are minorities."  *Id.*

Having profited from the industry's low wages and its own illegal pay practices, Defendant has become a sizable operation.  For example, in 2014 Defendant's home care workers generated more than $41 million in revenue for Stella Orton.  SAC ¶ 14.  Yet despite having its illegal pay practices publically exposed in this class and collective action as well as another wage and hour class action recently filed against it in New York state court, Defendant still refuses to pay its hardworking home care workers the correct wages they are entitled to under state and federal law.  Home care workers are some of the most vulnerable members of the workforce.  To prey on them as Defendant has done here is unconscionable.

Plaintiff brings claims under the Fair Labor Standards Act (the "FLSA") for unpaid overtime (Count I) and Defendant's prompt payment violations (Count II).  Plaintiff also brings claims under the New York Labor Law (the "NYLL") for unpaid overtime under the theory that

all Class Members were misclassified as overtime exempt companions (Count III), or in the alternative that all Class Members were owed overtime of at least one and one-half times the minimum rate required under New York law (Count IV).  Finally, Plaintiff's complaint challenges Defendant's failure to comply with the NYLL's requirements regarding spread-of-hours pay (Count V), timeliness and frequency of pay (Count VI), annual wage notices (Count VII), and wage statements (Count VIII).

Following the Court's October 18 pre-motion conference, Defendant filed a partial motion to dismiss on November 13.  Mem. of Law in Supp. of Defendants' [*sic*] Mot. to Dismiss ("Def.'s Br.") (ECF No. 47-2).  As set forth below, the Court should reject <u>all</u> of Stella Orton's arguments.

<u>**ARGUMENT**</u>

**I.     PLAINTIFF DISPUTES THAT DEFENDANT IS EXEMPT FROM NYLL WAGE ORDERS, AND DISMISSAL OF PLAINTIFF'S CLAIMS PRIOR TO DISCOVERY IS IMPROPER**
*(Responding to Defendant's Point II(A), pp. 4–11)*

Under applicable New York law, non-FLSA exempt hourly workers are entitled to an overtime rate of one and one-half times their regular rate, while FLSA exempt employees are entitled to an overtime rate of one and one-half times the minimum wage.  12 NYCRR § 142-2.2.  Defendant does not dispute that Plaintiff and other Class Members worked more than 40 hours per week, or that it failed to pay Plaintiff and its thousands of other home care workers an overtime premium prior to October 2015.  Instead, Defendant spends the bulk of its motion papers claiming that it was justified in depriving its home care workers of overtime pay because as a supposed "non-profitmaking institution" Stella Orton is allegedly exempt from 12 NYCRR § 142-2.2 and other applicable wage orders.  Specifically, Defendant claims that because it made an election under NYLL § 652(3)(b) available to bona fide non-profits, it did not have to follow

3

otherwise applicable pay regulations.  Yet this affirmative defense based on Defendant's non-profit status is premature, incorrect as a matter of law, and likely false, as the available evidence strongly suggests that Defendant is in fact a highly lucrative for-profit home care company.

> **A.      The Legal Standard for Assessing Stella Orton's Claimed Exemption Pursuant to NYLL § 652(3)**

> **1.      NYLL § 652(3) Requires Satisfaction of Three Requirements**

Defendant's motion to dismiss Plaintiff's Counts three, four, and five is based entirely on its claim that it is exempt from coverage under the applicable NYLL wage order—the Minimum Wage Order for Miscellaneous Industries and Occupations (12 NYCRR § 142).  This wage order requires that non-FLSA exempt employees be paid an overtime rate of one and one-half times their regular rate.  12 NYCRR § 142-2.2; *see also* SAC Count III (seeking overtime pursuant to Plaintiff's non-FLSA exempt status).  For FLSA exempt employees, the wage order requires that they be paid an overtime rate of one and one-half times the minimum wage rate required under New York law.  12 NYCRR § 142-2.2; *see also* SAC Count IV (seeking this alternative minimum overtime rate if Plaintiff is FLSA exempt).  The wage order also requires employers such as Defendant to pay an employee an extra hour of pay for split-shifts or days in which the employee's "spread of hours" exceeds 10 hours.  12 NYCRR § 142-2.4; *see also* SAC Count V (claiming spread of hours pay).

NYLL § 652(3) provides non-profitmaking institutions with an option to exempt themselves from the wage orders relevant here.  To avail itself of such an exemption, a non-profit must satisfy three requirements.  First, it must qualify as a "non-profitmaking institution" within the requirements set forth by the NYLL, i.e., it must (1) be "organized and operated exclusively for religious, charitable or educational purposes," and (2) have "no part of [its] net earnings . . . inure to the benefit of any private shareholder or individual."  NYLL § 651(8).

Second, it must "certif[y] under oath within six months after it was organized or first employed such employees that it would pay and thereafter intended to pay [the required minimum wage] to each of its employees in every occupation."  NYLL § 652(3)(b).  Third, "commencing six months after it was organized, or first employed such employees," Stella Orton must prove "it paid and _continues to pay_ such [statutory minimum] wage[s] _to each of its employees_ in every occupation."  *Id*.  (emphasis added).  For the reasons set forth below, Defendant cannot avail itself of this exemption.

### 2.    Stella Orton's Claimed Exemption Is to Be Narrowly Construed

New York's wage and hour laws are remedial in nature.  *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289 (E.D.N.Y. 2010); *Pray v. Long Island Bone & Joint, LLP*, No. 14 Civ. 5386 (SJF) (SIL), 2016 WL 9455557, at *9 (E.D.N.Y. Aug. 11, 2016); *Settlement Home Care v. Indus. Bd. of Appeals of Dep't of Labor*, 542 N.Y.S.2d 346, 348 (App. Div. 1989).  "Remedial statutes are those designed to correct imperfections in the prior law, or which provide a remedy for a wrong where none previously existed.  They are to be liberally construed so as to spread their beneficial results as widely as possible . . . ."  *Mlodozeniec v. Worthington Corp.*, 189 N.Y.S.2d 468, 471 (App. Div. 1959), *aff'd*, 204 N.Y.S.2d 163.  As such, "exemptions to the overtime pay requirements are narrowly construed against the employers seeking to assert them." *Pray*, 2016 WL 9455557, at *9; *see also Radich v. Council of City of Lackawanna*, 462 N.Y.S.2d 928, 931 (App. Div. 1983) ("A statutory exception must be strictly construed so that the major policy underlying the legislation is not defeated."), *aff'd*, 472 N.Y.S.2d 82; *Rossi v. Flying Horse Farm, Inc.*, 16 N.Y.S.3d 316, 318 (App. Div. 2015) ("The exemption is to be strictly construed . . . and all doubts should be resolved in favor of the general provision rather than the exception.") (internal quotations and citations omitted).

5

### 3.      Stella Orton Bears the Burden of Proving Exempt Status

Moreover, it is well settled that employers claiming an exemption bear the burden of proving exempt status.  *See, e.g., Rossi*, 16 N.Y.S.3d at 318.  Further, as affirmative defenses, exemptions are generally not considered at the motion to dismiss stage.  *See DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) (Plaintiff was not "required to plead facts at this [dismissal] stage of the proceedings to support her position that she was a non-exempt employee, that is, one who falls outside of the [overtime] exemptions.  A claim of exemption . . . is an affirmative defense, and the employer bears the burden of proof in making any such claim."); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (affirmative defenses are not available on a motion to dismiss, unless "the defense appears on the face of the complaint"); *Dejesus v. HF Mgmt. Servs, LLC*, No. 12 Civ. 1298 (ERK) (RML), 2012 WL 5289571, at *2 (E.D.N.Y. Oct. 23, 2012) ("[T]he claim of exemption is likely to be heavily fact-intensive and inappropriate for resolution at the motion to dismiss stage."); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) (dismissal only appropriate where exemption 'appears on the face of the complaint'") (quoting *Pani*, 152 F.3d at 74).

### B.      Assessing Stella Orton's Claimed Exemption is Premature at this Stage

Plaintiff alleges that Defendant does not meet the statutory definition of a non-profit because it is operated as a for-profit entity and its net earnings inure to the benefit of a private individual(s).  SAC ¶ 17.  Further, Defendant has failed to offer any proof it has continued to pay minimum wages to each of its employees.  NYLL § 652(3)(b).  This is fatal to Defendant's motion for two reasons.  First, the SAC's detailed allegations and Defendant's utter lack of proof that it continues to pay all employees at least the minimum wage demonstrate that any inquiry into Defendant's claimed exemption is premature at the motion to dismiss stage.  Binding Second Circuit precedent only allows dismissal if the claimed affirmative defense "appear[s] on

the face of the complaint." *Pani*, 152 F.3d at 74.  Here, the exact opposite is the case.  The SAC's allegations, which must be taken as true, demonstrate that Defendant does not meet the Legislature's definition of a non-profit.  Indeed, in Section I.C below Plaintiff thoroughly establishes that were the Court to consider Defendant's claim to non-profit status at this juncture the only warranted conclusion is that Defendant does not meet the NYLL's definition of a "non-profitmaking institution."  NYLL § 651(8).

Second, Defendant's own failure to show universal minimum wage payment also requires the motion's denial.  This exact issue was decided in *Smellie v. Mount Sinai Hosp.*, No. 03 Civ. 0805 (LTS) (DFE), 2004 WL 2725124 (S.D.N.Y. Nov. 29, 2004).  Like here, in *Smellie*, the defendant moved to dismiss the NYLL counts because it "applied for and was granted an exemption pursuant to Section 652(3)(b) of the NYS Labor Law," and the "exemption remains in effect." *Id*. at *2.  However, the *Smellie* plaintiffs claimed that other workers were not paid the minimum rate.  *Id*.  This was sufficient to deny the motion to dismiss.  *Id*.  The court reasoned that, because "the institutional exception relied upon by Mount Sinai is available to an institution that '*pays* and *continues to pay* to each of its employees in every occupation a wage . . . of not less than the minimum wage provided in . . . this section,'" the plaintiffs' claims do not fail as a matter of law.  *Id*. (emphasis in original) (quoting NYLL § 652(3)(b)).  Arguments to the contrary were immaterial as "Mount Sinai has merely identified an issue of material fact." *Id*.

Here, just as in *Smellie*, there are ample grounds to believe that Stella Orton has not paid each employee the minimum wage for all hours worked since Defendant applied for exempt status more than 35 years ago.  First, Stella Orton is currently facing a class action in New York state court which explicitly alleges that Stella Orton is violating New York's minimum wage laws.  Compliant ¶¶ 4, 11, 23, 29, First Cause of Action: New York Labor Law Minimum Wage,

*Troshin v. The Stella Orton Home Care Agency, Inc.*, No. 0159312/2016 (N.Y. Sup. Ct. Nov. 4, 2016), McInturff Decl. Ex. B.  Second, Stella Orton's own collective bargaining agreements ("CBA") unequivocally demonstrate that the company violates New York's minimum wage requirements.  Per the CBA, a "Sleep-in" case is a "twenty-four (24) hour shift assignment with a Client."  Memorandum of Agreement ¶ 4, McInturff Decl. Ex. C.  Yet for those 24-hour shifts, Stella Orton's home care workers have "eight (8) hours of unpaid sleep time and three (3) hours of unpaid duty-free meal time or break periods" systematically excluded from their pay.  *Id.*  However, New York's First and Second Appellate divisions have recently ruled that such pay arrangements violate New York's minimum wage laws.  *Tokhtaman v. Human Care, LLC*, 52 N.Y.S.3d 89, 91 (App. Div. 2017), *leave to appeal dismissed*, No. 2017-990, 2017 WL 5616020 (N.Y. Nov. 21, 2017); *Moreno v. Future Care Health Servs., Inc.*, 61 N.Y.S.3d 589, 591 (App. Div. 2017); *Andryeyeva v. N.Y. Health Care, Inc.*, 61 N.Y.S.3d 280, 282–83 (App. Div. 2017).  The Honorable Carolyn E. Demarest, J.S.C.'s ruling in *Andryeyeva,* 45 Misc. 3d 820, 833 (N.Y. Sup. Ct. 2014) succinctly laid bare the legal fallacy supporting home care companies' claims that it is lawful to pay a 24-hour home care worker for only 13 hours:

> The Court rejects defendants' contention that, as a matter of law, sleep and meal hours must be excluded from the hourly wages of a home attendant who does not reside or live in the home of his or her client.  As a non-residential employee, a putative class member is required by the defendant employer to be on the premises of the client for twenty-four hours, predominantly for the benefit of the employer and the client, and the amount of time the home attendant is actually able to spend sleeping or for meals is irrelevant.

*Id*. at 833.[1]

---

[1] That the agreement to break New York's minimum wage laws is memorialized in a CBA is irrelevant because "it is well settled that an employee may not waive the protections of the Labor Laws by private agreement."  Id.  (citing *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 311 (E.D.N.Y. 2009).

Finally, according to Stella Orton's 2015 tax return Defendant's own HR Director

Christine Sileo worked on average 35 hours per week but was paid only $11,742 for the year.

Form 990, Part VII, Section A, McInturff Decl. Ex. D.  Assuming Ms. Sileo worked 50 weeks in

2015, she was paid approximately $6.71 per hour, which is well below the minimum wage.  In

light of these facts, it is highly likely that Defendant will not be able to show that it has

universally complied with New York's minimum wage rules.[2]

### C.   Even If It Were Considered, Stella Orton Cannot and Did Not Show Compliance with NYLL § 652(3)

#### 1.   Stella Orton's Claimed Exemption Is Facially Deficient

Even if the Court were to consider Defendant's purported exemption status at this

juncture, it is clear that Stella Orton cannot avail itself of the exemption because it plainly fails

NYLL § 652(3)'s certification requirement.  Defendant emphasizes its NYLL § 652(3) election

by pointing to its filing of a notarized certification.  Davidoff Decl. (ECF No. 47-1), Ex. E.  But

Stella Orton's certification, on its face, conclusively establishes that Defendant is not an eligible

non-profitmaking institution under the NYLL.  The NYLL defines "non-profitmaking

institution" as follows:

> "Non-profitmaking institution" means any corporation . . .
> organized and operated exclusively for religious, charitable or
> educational purposes, no part of the net earnings of which inure to
> the benefit of any private shareholder or individual.

NYLL § 651(8).

---

[2] These arguments alone should cause Defendant to withdraw this branch of its motion.  Indeed, that is exactly what Defendant's same counsel from the FordHarrison firm did when faced with similar arguments last year.  *See Safonova v. Home Attendant Vendor Agency, Inc.*, No. 150777/2016 (N.Y. Sup. Ct. Sept. 9, 2016) (stipulation withdrawing motion to dismiss minimum wage and overtime counts the defendant claimed were barred by the company's NYLL § 652(3) election), attached as McInturff Decl. Ex. E; *see also* Def.'s Mem. of Law in Supp. of Mot. to Partially Dismiss Pl.'s Compl. at pp. 3–6 (making nearly identical arguments to those counsel advances here), attached as McInturff Decl. Ex. F.

Stella Orton's certification contains the following statement: "The institution named above was organized and is operated exclusively for," followed by four options: "educational purposes," "religious purposes," "charitable purpose," and "other purposes (explain)." Stella Orton's signing director checked the box next to "other purposes." As additional proof that "other purposes" was the intended choice, the director provided an explanation of these other purposes, which was the only option that called for an additional explanation.



Davidoff Decl. (ECF No. 47-1), Ex. E.

Below on the certification form, the following statement appears: "No part of the net earnings of this institution inures to the benefit of any private shareholder of individual," followed by two checkboxes: "No" and "Yes." Stella Orton's director checked the box next to "No," rejecting the preceding statement.

Accordingly, on the certification, Stella Orton, under oath, admitted that (1) it was organized and operated for purposes <u>other</u> than educational, religious, or charitable, and (2) at least part of its net earnings inured to the benefit of a private shareholder or individual. By its own admission, Stella Orton was not eligible to opt out of the wage orders. Simply put, an employer cannot avail itself of the benefit reserved exclusively for non-profitmaking institutions by means of a document containing two admissions, either of which disqualifies the employer

10

from non-profit status.[3]

### 2. Plaintiff Alleges that Stella Orton Is a For-Profit Company and Is Therefore Not Entitled to Exemption from New York's Wage Orders

a. The Allegations in the Complaint Create a Reasonable Inference That Stella Orton Does Not Meet the NYLL's Definition of a Non-Profitmaking Institution

Further, even if the Court were to entertain Stella Orton's premature and unsubstantiated claim that it complied with NYLL § 652(3)(b)'s certification and universal minimum wage requirements, there is ample basis at this early juncture for the Court to credit Plaintiff's claim that Stella Orton is not a bona fide non-profit.

The NYLL expressly provides that only non-profits can be exempt from wage orders, a fact that Stella Orton does not challenge. *See* NYLL § 652(3)(a) ("Application of article.  This article shall apply to non-profitmaking institutions.").  A "non-profitmaking institution" must (1) be "organized and operated exclusively for religious, charitable or educational purposes," and (2) have "no part of [its] net earnings . . . inure to the benefit of any private shareholder or individual."  NYLL § 651(8).

The SAC alleges facts supporting a strong inference that Stella Orton is a for-profit entity handsomely benefiting private shareholders or individuals.  SAC ¶ 14 (ECF No. 41).  Despite Stella Orton's attempt to characterize the alleged facts as "nothing more than a red herring and of no legal consequence" (Def.'s Br. at 6), these allegations are sufficient, at the pleading stage, to deny the motion to dismiss.

A highly experienced accountant, David Sands from Buchbinder Tunick & Company LLP who reviewed Stella Orton's and its related entities' public tax filings identified several

---

[3] It is irrelevant that the Commissioner confirmed "[t]he exemption has been and is currently in effect," based on the certification's filing, not the review of its contents.  Def.'s Br. at 9.

irregularities suggesting that Stella Orton is not operated exclusively for charitable purposes and that at least a part of the company's profit inures to the benefit of a private individual(s). In other words, because Stella Orton does not actually comply with the definition of a non-profitmaking institution as set forth in NYLL § 651(8), it is not entitled to claim an exemption from New York's wage orders. For example, among other allegations, the SAC alleges that:

> Despite their size, Stella Orton's and Richmond Home Need's directors' and top officers' reported compensation (if any) is dramatically lower than similarly sized non-profits.

SAC ¶ 14. This allegation creates an inference that these individuals are compensated in another way, such as sharing in Stella Orton's profits through a related profitmaking corporation, which disqualifies Stella Orton from the non-profitmaking status under the NYLL. In another example, the SAC contains the allegation that:

> Defendant Stella Orton's HR Director is also Richmond Home Need's CEO. This individual is minimally compensated by Stella Orton and is reported to receive no compensation from Richmond Home Need for a much more demanding and high-profile role.

SAC ¶ 14. This allegation similarly creates an inference that an HR Director/CEO who receives little or no salary is compensated via other, hidden means. In yet another example, the SAC contains the allegation that:

> Both entities have large, unexplained expenses on their federal tax filings. For example, for each of the 2014 and 2015 tax years Defendant Stella Orton paid approximately $2,000,000 in outside "management" fees . . . .

SAC ¶ 14. Again, a suspiciously large management fee creates an inference that profits inure for the benefit of a private individual in the form of the "management fee." In sum, in the SAC, Plaintiff has pled more than enough factual content at this early dismissal stage for the Court to draw the reasonable inference that Stella Orton is a for-profit company.

Further, the SAC pleads facts suggesting that Stella Orton seeks to hide its true status:

Defendant and its related entity Richmond Home Need ("Richmond") share the same office but have different accountants and keep their books and records in separate locations; Defendant's tax returns disclose that it is related to Richmond Home Need, but Richmond's returns do not disclose its relationship with Stella Orton; despite performing similar services both Stella Orton and Richmond Home Need mischaracterize their revenue sources in their tax filings; and despite their size, Defendant and Richmond maintain an exceedingly low profile. SAC ¶ 14. These are more than sufficient facts to allow Plaintiff's claims to proceed to discovery. Yet there is more.

> b.   Additional Evidence of Defendant's Failure to Operate as a Bona Fide Non-Profitmaking Institution

Plaintiff's expert David Sands, CPA, CGMA, MST, has analyzed several years of Defendant's and Richmond's tax filings and related financial documents and his preliminary report based on this publically-available data sets forth the following additional damning details:

- "Stella Orton's tax filings on their face . . . call into serious question the Tax-exempt status of Stella Orton as a Not-For-Profit organization." Preliminary Expert Report of David Sands ¶ 4 ("Sands Report"), attached as McInturff Decl. Ex. G.

- "The company derives substantial revenues averaging in excess of $40,000,000 per year, and the available data suggests that significant sums are being diverted for impermissible purposes." *Id.*

- "Salaries paid to directors and other officers were combined with other salaries and wages. This suggests that the officers of Stella Orton and [Richmond] are earning compensation from other, undisclosed transactions." *Id.* ¶ 5.

- "Stella Orton's audited financial statements for the fiscal year ended June 30, 2016 reflected $1,898,246 as SUC income (sub contract). . . . I question the need for management fees and whether such management fees were paid to an unclassified related entity or indirectly to an officer or a director." *Id.* ¶ 6.

> c.   Stella Orton Fails to Rebut Plaintiff's Allegation That It Is a For-Profit Business

Defendant does not (and cannot) rebut the SAC's well-pled facts. Instead, Stella Orton attempts distraction. Defendant attaches forms purportedly showing that it is organized and

remains registered as a charity under both New York and Federal law.  Davidoff Decl. (ECF. No

47-1), Exs. A–C.  Yet none of these forms prove that Stella Orton is actually *operated* in

compliance with NYLL § 651(8).  At best, the documents establish that Stella Orton files forms

as a non-profit.  But such compliance is not proof of a bona fide charitable operation; rather it is

a classic form-over-substance argument that the Court should reject.

Stella Orton also claims that "the issue before this Court is **not (and cannot be)** whether

Stella Orton is a 'for-profit' corporation."  Def.'s Br. at 9 (emphasis in original).  But if non-

profit status is a condition precedent for Stella Orton's claimed exemption, then Defendant's

non-profit status **is** before the Court.  Stella Orton cannot on the one hand interpose an

exemption defense and on the other hand tell the Court not to question its non-profit status.[4]

### D.    The Court Has Jurisdiction to Rule on the NYLL § 652(3) Exemption

Having no adequate defense to Plaintiff's allegation that Stella Orton is a for-profit entity,

Defendant conjures up another fiction, namely that only the Commissioner has jurisdiction to

assess the validity of a claimed exemption under NYLL § 652(3).  Def.'s Br. at 7.  First, and

notably, Stella Orton does not cite <u>any</u> authority in support of this curious proposition.  Further,

the statute's text shows no evidence of the purported exclusivity Stella Orton claims.  In fact,

counter to Defendant's unsubstantiated claim that the Commissioner has plenary power over

NYLL § 652(3), the text's plain language only permits the Commissioner to revoke a non-

---

[4] Addressing an analogous issue—a plaintiff's standing to compel the revocation of a defendant's non-profit tax exemption—the Second Circuit held that to establish standing, "[a] plaintiff must allege: (1) a personal injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) which is likely to be redressed by the requested relief."  *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621, 624 (2d Cir. 1989) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  In the present case, Plaintiff has sufficiently alleged (1) personal injury, failure to receive overtime compensation in the amount one and a half times the basic minimum hourly rate (SAC ¶¶ 33, 92, 93); (2) the underpayment is traceable to Stella Orton's conduct, as Defendant claims that these sums are not owed because it is a non-profit; and (3) Plaintiff has requested the issuance of a declaratory judgment that this practice is unlawful and an award of all wages owed.  SAC, Prayer for Relief ¶¶ G–H.

profit's election on "issuance of an order by the commissioner finding that such institution has failed to pay the wages provided in paragraph (b)," i.e. the applicable minimum wage. The statute evinces no intent to vest the Commissioner with exclusive jurisdiction to determine whether a purported non-profit is actually a "non-profitmaking institution" that does not have to pay overtime. Moreover, Defendant's own cited case undercuts its jurisdictional exclusivity claim—the law is clear, employees may petition the courts for unpaid overtime. *See Diaz v. Elecs. Boutique of Am., Inc.*, No. 04 Civ. 0840E (SR), 2005 WL 2654270, at *8 (W.D.N.Y. Oct. 17, 2005) ("[T]he Second Circuit Court of Appeals and other New York District Courts have verified that overtime claims may be brought pursuant to NYLL § 650 *et seq.* . . .").

Further, Defendant's reading of NYLL § 652(3)(c) as giving the Commissioner exclusive jurisdiction over evaluating the propriety of a NYLL § 652(3) election clearly fails the applicable exclusive jurisdiction test. The Legislature may confer "exclusive original jurisdiction on an administrative agency to adjudicate disputes under a regulatory program authorized by statute." *Vazquez v. Sichel*, 814 N.Y.S.2d 482, 485 (N.Y. Civ. Ct. 2005). In doing so, however, "the Legislature must specifically make that choice . . . to provide for the agency's adjudication of a type of regulatory dispute in the first instance, subject to judicial review." *Id.*; *see also Suraci v. Mucktar*, 725 N.Y.S.2d 155, 157 (N.Y. Civ. Ct. 2000) ("Unless the Legislature has expressed an explicit intention to vest exclusive original jurisdiction in the administrative agency, the court has concurrent jurisdiction."). Here, instead of an expression of the Legislature's "explicit intention to vest exclusive original jurisdiction" with the Commissioner, the statute merely allows the Commissioner to terminate a NYLL § 652(3) election on the limited grounds that the non-profit failed to pay the applicable minimum wage.

This is in stark contrast to NYLL § 663(1), which creates a private right of action to

enforce the wage rights established by NYLL § 652 and NYCRR § 142-2.2.  Notably, the next

paragraph, NYLL § 663(2), authorizes the Commissioner to bring an action similar to the one

available to employees.  This is clear legislative intent for *concurrent* jurisdiction, which

Defendant's contrived reading of NYLL § 652(3)(c) completely frustrates.  Indeed, Defendant's

reading of NYLL § 652(3)(c) as conferring exclusive jurisdiction on the Commissioner for

claims brought by a supposed non-profit's employees for wages owed under NYLL § 652 and

NYCRR § 142-2.2 substantially limits the private cause of action otherwise available to New

York's workers.  To borrow a maxim oft used in determining Congress' legislative intent, courts

generally find that the Legislature "does not, one might say, hide elephants in mouseholes."

*Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001).

It is also important to note that the Commissioner takes no action when an employer files

a certification under NYLL § 652(3)(b).  This is in stark contrast with NYLL § 652(3)(c)'s

revocation provision that requires the Commissioner to issue an order.  The contrast in the

Commissioner's actions when the exemption becomes effective (no action by the Commissioner)

vs. revocation (an order by the Commissioner) underscores the lack of substantive administrative

review by the Commissioner.  Accordingly, in ruling on Plaintiff's claims the Court will not

interfere with the Commissioner's prior analysis—because there was none.

Moreover, NYLL § 652(3)'s exemption system operates as an honor system and is thus

susceptible to abuse.  The Commissioner does not review the employer's certification.  The

Commissioner does not make an independent assessment as to the veracity of the information

provided on the certification at the time of filing, let alone after filing.  Thus, merely filing the

certification appears to be the triggering event for a purported non-profit's ability to take

advantage of the exemption.  The NYDOL letter Stella Orton attaches confirms as much.  *See*

16

Davidoff Decl. (ECF. No 47-1), Ex. F.  The letter only states that Stella Orton "has applied for

the overtime exemption," and that "this exemption has been and is currently in effect."  *Id.*

Consistent with the statute's plain language, the NYDOL made no determination based

on Stella Orton's filing of the certification.  Under Second Circuit precedent, administrative

actions that fail to make binding determinations are reviewable by a district court, rather than

through the administrative review process.  *See Dougherty v. Carver Federal Sav. Bank*, 112

F.3d 613, 620 (2d Cir. 1997) ("Thus, in deciding a motion to dismiss for lack of subject matter

jurisdiction in reliance on [the relevant statute], attention must be focused on what issues the

agency has actually decided.").  Here, because the Commissioner has not actually decided

whether Stella Orton is a lawful non-profit, this issue is reviewable by the courts.

Additionally, Stella Orton's failure to cite *Smellie v. Mount Sinai Hosp.* is both

instructive and dispositive.  In that case, as discussed above, the court made a determination

regarding the NYLL § 652(3) exemption's applicability and did not defer to the Commissioner.

2004 WL 2725124 at *2.  In *Smellie*, despite the certification to the Commissioner (as in this

case), and despite the NYDOL's confirmation letter (as in this case), and irrespective of the

revocation provision set forth in NYLL § 652(3)(c), the court analyzed the relevant statutory

language and assessed the exemption's applicability—without deferring the question to the

Commissioner.  *Id.*  In particular, the *Smellie* court recognized that if a statutory condition for the

exemption is not met, the exemption is not valid.  *Id.*  In *Smellie*, this condition was the

continued payment of minimum wages, which plaintiff alleged defendant had failed to do.  *Id.*

In this action, Plaintiff alleges that Stella Orton fails to meet an even more fundamental

condition—being a non-profit.  *See* NYLL § 652(3)(a) ("This article shall apply to non-

profitmaking institutions.").  Just as Judge Swain did in *Smellie*, this Court is well within its

authority to determine the exemption's applicability in light of pleadings to the contrary.

## II.   PLAINTIFF IS ENTITLED TO RECOVER FOR DEFENDANT'S NYLL § 191 AND 195 VIOLATIONS RELATED TO TIMELINESS/FREQUENCY OF PAYMENT, ANNUAL WAGE NOTICES, AND WAGE STATEMENTS
*(Responding to Defendant's Point II(B)–(C), pp. 11–13)*

### A.   Plaintiff Is Entitled to Recover for Defendant's NYLL § 191(1)(a)(i) Frequency/Timeliness of Payment Violations

Stella Orton does not challenge that Plaintiff properly alleged violations stemming from the NYLL's requirements for frequency and timeliness of wage payments.  Specifically, in the SAC, Plaintiff alleges that while working for Stella Orton she was a "manual worker" (SAC ¶¶ 13, 47), and as such "NYLL § 191(1)(a)(i) requires that Plaintiff . . . be paid weekly and that wages be paid with no more than a 7-day lag."  SAC ¶ 48.  Finally, Plaintiff alleges that Stella Orton failed to pay her with the required timeliness and frequency.  SAC ¶¶ 50–53.

Stella Orton's challenge to Plaintiff's NYLL § 191 claim (Count VI) is twofold.  First, it argues that NYLL § 191 does not afford Plaintiff a private right of recovery.  Def.'s Br. at 12.  Second, Defendant argues that because it is allegedly a non-profit, NYLL § 191 allows it to pay Plaintiff "in accordance with the agreed terms of employment, but not less frequently than semi-monthly," which it did.  *Id.*  Both of Defendant's arguments are without merit.

In support of its contention that a "stand-alone" violation of NYLL §191(1)(a)(i) contains no provision for private recovery, Stella Orton cites a single case that goes against the weight of authority holding that an employee may recover for both minimum wage and overtime violations and separately for frequency/timeliness of wage payment violations.  *See Shin Won Kang v. Inno Asset Dev., LLC*, No. 08 Civ. 4848 (SLT) (JMA), 2011 WL 1674554, at *3 (E.D.N.Y. Jan. 28, 2011) (awarding damages for untimely payments to manual workers under the NYLL and observing that "[a]n employer's failure to timely pay its employees for their work, as claimed by plaintiffs in this case, entitles the employees to sue for their unpaid wages."); *Lopez-Serrano v.*

*Rockmore*, 132 F. Supp. 3d 390, 404 (E.D.N.Y. 2015) (granting leave to amend the complaint to

include both minimum wage and overtime violations as well as NYLL § 191(1)(a)(i) violations

for late payment of wages to manual workers); *Gaughan v. Rubenstein*, No. 16 Civ. 8062 (PAE)

(KHP), 2017 WL 2964818, at *13 (S.D.N.Y July 11, 2017) (same); *Belizaire v. RAV*

*Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) ("Accordingly, Plaintiff's

allegations are sufficient to establish Defendant's liability under the FLSA and NYLL, both for

unpaid wages and for late payments made to Plaintiff as a result of delayed or bounced payroll

checks."); *Humphrey v. RAV Investigative & Sec. Servs. Ltd.*, No. 12 Civ. 3581 (NRB), 2016 WL

7190073, at *6 (S.D.N.Y. Nov. 29, 2016) (awarding plaintiff damages for both minimum wage

violations and separately for untimely payments under the NYLL); *Wing Kwong Ho v. Target*

*Const. of NY, Corp.*, No. 08 Civ. 4750 (KAM) (RER), 2011 WL 1131510, at *14 (E.D.N.Y. Mar.

28, 2011) (observing that manual workers may sue for untimely wages under NYLL § 191(1)).[5]

The Court should follow the growing list of decisions that recognize a private right of action for

late and irregular wage payments.  A contrary holding would allow an employer to unlawfully

delay employees' wages and pay them on a whim without recourse.  This cannot possibly further

the NYLL's explicit timeliness of pay requirements for manual and other workers.

     As to Stella Orton's contention that it is a non-profit, Plaintiff has addressed it in Section

I.C(2) above and based on the allegations in the SAC, Stella Orton was required to pay its

manual workers "weekly and not later than seven calendar days after the end of the week in

which the wages are earned."  SAC ¶ 48.  It is worth noting, however, that the NYLL's

frequency/timeliness requirement is a statutory mandate independent of the Commissioner's

---

[5] Stella Orton's cited case, *Hussain v. Pakistan Int'l Airlines Corp.*, No. 11 Civ. 932 (ERK) (VVP), 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012), fails to cite any cases in support of its holding that NYLL § 198(1-a) only provides for recovery of unpaid, as opposed to late, wages.

19

wage orders.  As such, Stella Orton's NYLL § 652(3) election has no bearing on Stella Orton's obligation to make timely payments under the NYLL.  The only way Stella Orton can escape the NYLL's timeliness requirement is if it is a bona fide non-profitmaking institution.  After vehemently arguing that "the issue before this Court is ***not (and cannot be)*** whether Stella Orton is a 'for-profit' corporation" (Def.'s Br. at 9, emphasis in original), Stella Orton now apparently admits that it is proper for the Court to resolve any questions concerning the propriety of its non-profit status.  Again, as discussed in Section I.C(2) above, the SAC alleges more than sufficient facts to draw an inference that Stella Orton is not operated as a non-profit.  This is sufficient to deny Stella Orton's motion with respect to Plaintiff's NYLL timeliness claim (Count VI) and any other count where Stella Orton's defense depends on its non-profit status (Counts III–V).

### B.  Plaintiff Is Entitled to Recover for NYLL § 195(1) Wage Notice Violations

Stella Orton asserts that Plaintiff cannot enforce her wage notice claim (Count VII) because she was hired before the statute's effective date.  Def.'s Br. at 12.  While some courts agree with Defendant's argument, courts in this Circuit have "not answered this question in a uniform manner." *Severino v. 436 W. LLC*, No. 13 Civ. 3096 (VSB), 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015).  This is because the "legislature could not have intended to confer a private right of action upon new employees, while depriving existing employees of the same right." *Cuzco v. F & J Steaks 37th St. LLC*, No. 13 Civ. 1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014); *see also id*. ("Nothing in the rationale for the [Wage Theft Prevention Act] even suggests that new employees should receive greater protections."); *Zhi Yong Zheng v. Nanatori Japanese Rest. Corp.*, No. 15 Civ. 1222 (RJD) (RML), 2017 WL 758489, at *5 (E.D.N.Y. Jan. 9, 2017) (allowing employees hired before the statute's effective date to sue because such employees were required to be given notice "on or before February first of each subsequent year of the employee's employment with the employer."); *Zhou v. Aberdeen Dim*

*Sum & Seafood Inc.*, No. 14 Civ. 2014 (VB), 2016 WL 6238651, at *4 (S.D.N.Y. Oct. 24, 2016)

(finding liability for violating the notice provision of NYLL § 195(1) with respect to plaintiff

employed before April 2009); *Cortez v. 8612 Best Coffee Shop Inc.*, No. 13 Civ. 3095 (RRM)

(RML), 2015 WL 10709830, at *7 (E.D.N.Y. Aug. 14, 2015) (same).

 While Defendant's cited cases reach a different, anti-employee, result they do so

exclusively on the basis of NYLL § 198(1-b)'s plain language.  Yet one of Defendant's cases

correctly observes that such a strict reading of the Wage Theft Prevention Act is "odd[]" and that

"[t]here is no obviously discernible reason why this should be the case, since Section 195(1)

speaks of the provision of the notice both at time of hiring and annually thereafter in equally

obligatory terms."  *Yuquilema v. Manhattan's Hero Corp.*, No. 13 Civ. 461 (WHP) (JLC), 2014

WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014).

 Plaintiff believes that Defendant's cited cases lead to an absurd, unreasonable, and

inequitable result, which is contrary to the legislative intent and results in the very harm the

Wage Theft Prevention Act (the "WTPA") was designed to prevent.  The Court should not

interpret this employee protection law in such an illogical manner.  *Sorrells v. United States*, 287

U.S. 435, 446 (1932) (Hughes, C.J.) ("Literal interpretation of statutes at the expense of the

reason of the law and producing absurd consequences or flagrant injustice has frequently been

condemned.") (discussing other Supreme Court cases); *Local Union 36, Int'l Bhd. of Elec.*

*Workers, AFL-CIO v. NLRB*, 631 F.3d 23, 27 (2d Cir. 2010) ("[w]here the result of a literal

interpretation of statutory language is absurd, or where the obvious purpose of the statute is

thwarted by such slavish adherence to its terms, we may look beyond the plain language.")

(quoting *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 677 (2d Cir. 1985)).

 Alternatively, an implied private of right of action exists for Plaintiff's WTPA wage

notice claim.  To determine whether an implied private right of action exists, the following

factors are considered: "(l) whether the plaintiff is one of the class for whose particular benefit

the statute was enacted; (2) whether recognition of a private right of action would promote the

legislative purpose; and (3) whether creation of such a right would be consistent with the

legislative scheme."  *Sheehy v. Big Flats Cmty. Day, Inc.*, 543 N.Y.S.2d 18, 20 (1989).

First, Plaintiff, as a low-wage worker in New York, is exactly the type of worker whom

the WTPA is supposed to benefit.  Second, recognizing a private right of action for workers

employed by an entity prior to April 9, 2011, but not given the requisite statutory notice pursuant

to NYLL § 195(1) thereafter, promotes the WTPA's legislative purpose.  *See Copper v. Cavalry

Staffing,* LLC, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) ("The WTPA's sponsors justified the

legislation on the basis that 'a large number of employees are earning less than minimum wage

and others are being paid less than their correct wage.'") (quoting N.Y. Sponsors. Memo., 2010

S.B. 8380, 233rd Leg., 2010 Reg. Sess. (Oct. 28, 2010)).  The Legislature was concerned that

"[m]any employees are also not all receiving the appropriate amount of overtime compensation

and many employers are failing to adequately inform their employees of their wages and how

they are calculated in a language they can comprehend."  *Id*.  In an effort to combat these abuses,

the WTPA seeks to "dramatically" increase the penalties against employers "in order to far better

protect workers' rights and interests."  *Id*.  Notably, the statute's purpose is hobbled, not

advanced, when the same rights and remedies are not afforded to then-current employees.  Third,

recognizing a private right of action is consistent with the WTPA's legislative scheme because

the WTPA already allows for a private right of action in the virtually identical case of a new hire.

N.Y. Labor Law § 198(1-b).

### C.   Plaintiff Is Entitled to Recover for NYLL § 195(3) Wage Statement Violations

Stella Orton next argues that Plaintiff's claim for failure to provide accurate wage statements under NYLL § 195(3) (Count VIII) must fail because it is "based solely on Plaintiff's allegation that she was paid a 'straight time' rate for hours over 40 in a workweek." Def.'s Br. at 13. Stella Orton reasons that because Plaintiff's overtime claim "itself cannot withstand dismissal . . . this claim necessarily must also fail as a matter of law." *Id.* There are two reasons why Defendant is incorrect.

First, Stella Orton does not (and cannot) contest that Plaintiff has pled valid claims for overtime under the FLSA as effective January 1, 2015. SAC, Count I. Courts in the Second Circuit have determined that even when wage statements are given to an employee, an employer's failure to apply the proper overtime rate renders those statements inaccurate, unreliable, and in violation of NYLL § 195(3). *Copper*, 132 F. Supp. 3d at 468 (finding that "the New York legislature did not intend for inaccurate statements of overtime hours to satisfy the WTPA's wage-notice requirements," and basing its decision on the WTPA's "dramatic expansion of civil penalties" and "remedial purpose"); *Bazignan v. Team Castle Hill Corp.*, No. 13 Civ. 8382 (PAC), 2015 WL 1000034, at *3 (S.D.N.Y. March 5, 2015) (NYLL § 195(3) was violated because "the wage statements provided by Defendants were inaccurate."); *Khereed v. West 12th Street Rest. Group LLC*, No. 15 Civ. 1363 (PKC), 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016) (same).

Second, for Plaintiff's overtime claims prior to January 1, 2015, if Plaintiff's wage statement claims during this period must stand or fall together, as discussed in Section I above, there are several reasons why Plaintiff's wage statement claims should proceed.

**III.    PLAINTIFF'S FLSA PROMPT-PAYMENT CLAIM SHOULD BE SUSTAINED**
*(Responding to Defendant's Point III, pp. 13–15)*

Stella Orton does not dispute that "[a]lthough the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement." *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998).  It argues, however, that because Plaintiff was paid at the time of "regularly scheduled wage payments," her claim (Count II) must fail.  Def.'s Br. at 14.

Because the FLSA does not explicitly address the prompt payment requirement, courts consider the USDOL payment regulations.  *Conzo v. City of New York*, 667 F. Supp. 2d 279, 288–89 (S.D.N.Y. 2009) (citing *City of Troy*, 148 F.3d at 57).  The relevant USDOL interpretation provides that:

> Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106 (emphasis added).  The Second Circuit has also observed two principles relevant to the FLSA prompt payment requirement.  "First, it is clear that the FLSA requires wages to be paid in a timely fashion.  Second, the cases demonstrate that what constitutes timely payment must be determined by objective standards . . . ."  *City of Troy*, 148 F.3d at 57.  "Specifically, payment of overtime compensation earned in a particular workweek must generally be paid on the regular pay day for the period in which such workweek ends and in any event may not be delayed for a period longer than is reasonably necessary to compute and arrange for payment of the amount due."  *Inclan v. New York Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 500 (S.D.N.Y. 2015) (internal quotations omitted).

Plaintiff alleges, and Stella Orton does not dispute, that for every other week, it paid Plaintiff with a 7-day lag.  In other words, for every other week Plaintiff had to wait for fourteen

days to receive her pay.  While Stella Orton cites *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325,

333 (S.D.N.Y. 2009) for the proposition that a violation of NYLL § 191's timeliness/frequency

of payment requirement does not necessarily result in an FLSA prompt payment violation, the

violation of a state law covering the same requirements should at least inform the Court as to

what is a "reasonably necessary" delay.  Plaintiff submits that this delay was for a period longer

"than is reasonably necessary to compute and arrange for payment of the amount due." *Inclan*,

95 F. Supp. 3d at 500.  Specifically, because Stella Orton could, and did, pay Plaintiff within a

week for many weeks, it could easily have paid her this way for all weeks.  Under similar

circumstances, a court denied an employee summary judgment only because Defendant

highlighted an issue of fact as to why overtime payments were late:

> In this case, the parties agree that between January 1, 2002 and
> August 19, 2006, approximately $50,000 worth of overtime was
> paid to test plaintiffs more than two pay periods after the date on
> which it was worked. . . . The parties do not dispute the facts
> regarding what steps are taken by defendants to process time sheets
> and send out pay checks.
>
> However, the parties dispute why the payments were late and
> whether they could have been made sooner.  Plaintiffs blame the
> delay on defendants' "archaic" payroll system, pointing to errors
> made when the sign-in sheets are transcribed by hand, problems
> scanning the time sheets, and other such issues.  In contrast,
> according to defendants, any errors that occur are caused by
> uncontrollable factors, including the failure of plaintiffs to correctly
> record their overtime.
>
> Therefore, a genuine issue of material fact exists as to why overtime
> payments were late.

*Conzo*, 667 F. Supp. 2d at 288–89.

In the present case, similar to *Conzo*, the payments were delayed by two weeks, but Stella

Orton offers no excuse for the lateness.  But even if it had such an excuse, it would do no more

than raise an issue of fact, which should not preclude the Court from denying the instant motion.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's well-pled Second

Amended Class and Collective Action Complaint should be denied.


Dated:  December 15, 2017                         Respectfully submitted,

                                                  /s/ J. Burkett McInturff
                                                  ————————————————————
                                                  Steven L. Wittels (SW-8110)
                                                  J. Burkett McInturff (JM-4564)
                                                  Tiasha Palikovic (TP-5697)
                                                  WITTELS LAW, P.C.
                                                  18 HALF MILE ROAD
                                                  ARMONK, NEW YORK 10504
                                                  Telephone: (914) 319-9945
                                                  Facsimile: (914) 273-2563
                                                  slw@wittelslaw.com
                                                  jbm@wittelslaw.com
                                                  tpalikovic@wittelslaw.com

                                                  *Attorneys for Plaintiff and the Class*

                                                  Daniel Hymowitz (DH-0936)
                                                  HYMOWITZ LAW GROUP, PLLC
                                                  1629 Sheepshead Bay Road
                                                  Brooklyn, NY 11235
                                                  Telephone: (718) 807-9900
                                                  Facsimile: (866) 521-6040
                                                  daniel@hymowitzlaw.com

                                                  *Co-Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ J. Burkett McInturff