UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARAL AGARUNOVA,
Individually and on Behalf of All Others Similarly
Situated,

      Plaintiff,

                v.

THE STELLA ORTON HOME CARE AGENCY,
INC.,

      Defendant,

Case No. 16-CV-638 (MKB)(RLM)

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT THE STELLA ORTON HOME CARE AGENCY, INC.'S
MOTION TO COMPEL ARBITRATION**

---

Philip K. Davidoff, Esq.
Jeffrey G. Douglas, Esq.
FORDHARRISON LLP
*Attorneys for Defendant*
60 E. 42nd Street, 51st Fl.
New York, NY 10165
Telephone: 212-453-5900
Facsimile: 212-453-5959

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...................................................................................1

II.   BACKGROUND FACTS .......................................................................................... 2

   A. The Operative Alternative Dispute Resolution Provision ................................. 2

   B. Named-Plaintiff ................................................................................................. 4

   C. Opt-In Plaintiffs ................................................................................................ 5

III.   LEGAL ANALYSIS .................................................................................................6

   A. The Federal Arbitration Act Liberally Favors Arbitration ............................... 6

    (1)  Wage and Hour Claims are Subject to Arbitration ..................................... 8

    (2)  The Parties Agreed to Arbitrate ................................................................... 9

    (3)  The Arbitration Agreement Covers the Claims Asserted by Named-Plaintiff
        and the Opt-In Plaintiffs ............................................................................ 10

IV.   CONCLUSION ...................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Alfonso v. Maggies Paratransit Corp.*,
    203 F. Supp. 3d 244 (E.D.N.Y. 2016) ............................................................... 13, 14

*Arrigo v. Blue Fish Commodities, Inc.*,
    408 Fed. App'x 480 (2d Cir. 2011) ......................................................................... 7

*Arrigo v. Blue Fish Commodities, Inc.*,
    704 F. Supp. 2d 299 (S.D.N.Y. 2010) ..................................................................... 8

*AT&T Mobility, LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................................................... 9

*Bassett v. Elec. Arts, Inc.*,
    93 F. Supp. 3d 95 (E.D.N.Y. 2015) ........................................................................ 7

*Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*,
    180 F. Supp. 3d 236 (S.D.N.Y. 2016) ............................................................... 8, 10

*Chu v. Chinese-American Planning Council Home Attendant Program, Inc.*
    194 F. Supp. 3d 221 (Jul. 11, 2016) ..................................................................... 15

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
    58 F.3d 16 (2d Cir. 1995) ..................................................................................... 10

*Flanagan v. Prudential-Bache Sec., Inc.*,
    67 N.Y.2d 500 (1986) ............................................................................................. 6

*Hartford Acc. and Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001) ................................................................................... 7

*Maryland Cas. Co. v. Realty Advisor Bd. On Labor Rels.*,
    107 F.3d 979 (2d Cir. 1997) ................................................................................... 7

*McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*,
    35 F.3d 82 (2d Cir. 1994) ....................................................................................... 9

*Meza v. Gen. Battery Corp*,
    908 F.2d 1262 (5th Cir. 1990) ......................................................................... 15, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. (1983) ..................................................................................................... 10

*N.Y. Typographical Union No. 6 v. Bowne of N.Y. City, Inc., No. 90 CIV. 6422*
    (CSH), 1990 WL 170352 (S.D.N.Y. Oct. 31, 1990) ............................................... 9

*Abdullayeva v. Attending Homecare Services LLC, d/b/a Attending Home Care*
    No. 17-cv-5951 (JBW), 2018 U.S. Dist. (E.D.N.Y. Mar. 5, 2018) ....................................... 11

*Rodriguez-Depena v. Parts Auth., Inc.*,
    877 F.3d 122 (2d Cir. 2017) ................................................................................................ 8

*Supreme Oil Co. v. Abondolo*,
    568 F. Supp. 2d 401 (S.D.N.Y. 2008) ................................................................................ 7

**Statutes**

9 United States Code Service § 2 (2018) ..................................................................................... 7

Defendant, The Stella Orton Home Care Agency, Inc. ("Stella Orton"), respectfully submits this memorandum of law in support of its motion to compel arbitration of the claims asserted by named Plaintiff Maral Agarunova, as well as opt-in plaintiffs Alfira Caprita and Tatsiana Matveyenkava pursuant to the Federal Arbitration Act ("FAA") in accordance with the mandatory alternative dispute resolution contained in a Memorandum of Agreement between Stella Orton and the exclusive bargaining representative of Stella Orton's home health care workers 1199 SEIU United Healthcare Workers East ("1199").

## I.      PRELIMINARY STATEMENT

Plaintiff Maral Agarunova ("Named-Plaintiff" or "Agarunova"), a former home health care aide employed by Stella Orton alleges various violations of the wage and hour provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Agarunova originally filed her complaint on an individual basis on February 5, 2016. *See* Dkt. No. 1.   Nearly a year and a half later, and in large part based on service errors, Agarunova filed an Amended Complaint on September 5, 2017, asserting her claims as a collective/class action. *See* Dkt. No. 30. Agarunova filed the operative Second Amended Complaint ("SAC") on October 20, 2017. *See* Dkt. No. 41. The two FLSA opt-in Plaintiffs, Caprita ("Caprita") and Matveyenkava ("Matveyenkava") (collectively "Opt-In Plaintiffs") filed consent to join forms with the Court.  Stella Orton avers that the Named-Plaintiff and the Opt-In Plaintiffs' claims are subject to a mandatory arbitration provision contained in the governing Collective Bargaining Agreement between Stella Orton and 1199 and therefore their claims must be arbitrated in accordance with the arbitration provision.

1

## II.   BACKGROUND FACTS

### A. The Operative Alternative Dispute Resolution Provision

Stella Orton, a New York not-for-profit corporation, provides homecare services to Medicaid-eligible individuals who are medically or physically disabled and the elderly.   Stella Orton's approximately 1,200 home health care workers are members of 1199.

Stella Orton's employees have been members of 1199 and covered by a collective bargaining agreement and a series of memoranda of agreement extending and modifying that agreement since in or around July 2000.  At all times, the CBA contained a grievance/arbitration provision.

More recently, and dispositive for purposes of this motion, Stella Orton and 1199 entered into two memoranda of agreement containing provisions regarding the applicable grievance/arbitration procedures  First, on March 1, 2014, Stella Orton and 1199 entered into a memorandum of agreement agreeing to continue already ongoing discussions to implement an expanded grievance/arbitration provision to include wage and hour claims under the FLSA, NYLL and New York Wage Parity Law ("2014 MOA"). *See* Exhibit A to the Declaration of Philip K. Davidoff, Esq. (the "Davidoff Decl."), the 2014 Memorandum of Agreement.  That the parties were intent on agreeing to a new grievance/arbitration provision covering statutory claims such as those alleged herein is made plain by inclusion of language directing that, should they fail to agree on the final language of an alternative dispute resolution procedure covering federal and state claims, the dispute may be submitted to Arbitrator Martin F. Scheinman for final and binding arbitration.  The specific language of the 2014 MOA states:

> The Parties agree that given changes in federal and state law imposing new obligations on the Employer and exposing Employers to significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an expeditious and

2

> effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, or as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

*See id.*

In accordance with their 2014 MOA, over the course of the next year and a half, the parties continued to negotiate the final terms of the alternative dispute resolution provision ("ADR Provision"). On December 16, 2015, Stella Orton and 1199 executed a memorandum of agreement finalizing the terms of the ADR Provision. The memorandum of agreement, which contained several provisions in addition to the ADR Provision, had an effective date of December 1, 2015 ("2015 MOA").[1] *See* Exhibit B to Davidoff Decl., the 2015 Memorandum of Agreement executed by Stella Orton and 1199, with accompanying memorialization of ratification.

The ADR Provision makes unmistakably clear in section 1 that:

> The parties agree a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state and local wage-hour and wage parity statutes, ***all claims brought*** by either the Union or ***Employees***, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, ***shall be subject exclusively, to the grievance and arbitration procedures described in this Article*** . . . . ***All such claims*** if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below ***shall be*** submitted to final and binding arbitration . . .

---

[1] In addition to the ADR Provision, the 2015 MOA also included wage increases, modifications to hours worked, benefit fund contributions, holiday modifications, and paid time off modifications. These modifications immediately went into effect upon execution of the 2015 MOA retroactive to December 1, 2015.

3

*See* Davidoff Decl., Ex. B. (emphasis added).

Furthermore, the ADR Provision makes clear that employees may only pursue claims in arbitration on an individual basis, and not as a representative member of a class. *Id.* The remaining sections 2-6 outline the step-by-step procedures to implement the mandatory arbitration provision. *Id.*

Sections 2 and 3 pertain to the Union's obligations under the ADR Provision. *Id.* Section 2 outlines the procedures for mediating claims prior to proceeding to arbitration and establishes a timeline for requesting mediation. *Id.* Section 3 provides the procedure for the Union seeking arbitration of a grievance subject to the terms of the ADR Provision and the timeline for complying with the procedures. *Id.*

Section 4 deals with the limited and narrow scenario in which the Union decides not to pursue a grievance on behalf of an employee. *Id.* In that specific scenario, the employee is provided with two choices. *Id.* She may either pursue her claim individually, or not at all. *Id.* There is no language in the ADR Provision suggesting that, in light of the strong mandatory language used in Section 1, it provides for an employee any other option than pursuing her claims through the ADR Provision on an individual basis. *Id.*

Sections 5 and 6 provide additional procedural frameworks. Section 5 provides for post arbitration confirmation procedures. *Id.* Section 6 deals with discovery and admissibility issues related to the mediation phase. *Id.*

**B. Named-Plaintiff**

Named-Plaintiff Aguranova commenced her employment with Stella Orton as a home health aide in 2008. (SAC ¶10). Her employment ended in or around April 2015. *Id.* As with all

home health care workers employed by Stella Orton, Named-Plaintiff was a member of 1199 throughout the entirety of her employment.

### C. Opt-In Plaintiffs

Opt-in Plaintiff Caprita worked as a home health aide for Stella Orton from August 1, 2014 through August 5, 2016. *See* Exhibit C to the Davidoff Decl., the Complaint filed by Alfira Caprita on November 11, 2016 in *Caprita v. The Stella Orton Home Care Agency, Inc.*, No. 16 Civ. 6218 (E.D.N.Y. Nov. 11, 2016) ("*Caprita v. Stella Orton*"). Furthermore, Caprita was a member of 1199 from the time she commenced her employment through the date of her termination. Caprita was employed on December 16, 2015, the date Stella Orton and 1199 executed the 2015 MOA.

On November 8, 2016, Caprita commenced an action in the Eastern District of New York on behalf of herself and all others similarly situated against Stella Orton alleging violations of the FLSA and NYLL. No. 16 Civ. 6218. *See* Davidoff Decl., Ex. C.  On March 27, 2017, Stella Orton filed a second pre-motion letter requesting permission to move to dismiss based on the fact that Caprita was subject to a mandatory arbitration provision (*i.e.* the ADR Provision in the 2015 MOA). *See* Exhibit D to the Davidoff Decl., Stella Orton's Pre-Motion Letter filed on March 27, 2017 advising the Court about the mandatory arbitration provision contained in the 2015 MOA in *Caprita v. Stella Orton*.  On April 17, 2017, Caprita and Stella Orton filed a Stipulation of Discontinuance and the case was closed. *See* Exhibit E to the Davidoff Decl., the Stipulation of Discontinuance filed by Caprita and Stella Orton on April 17, 2017 in *Caprita v. Stella Orton*. Five months later, Caprita filed a Motion to Reopen Case with an accompanying memorandum of law alleging that the ADR Provision was "not a valid contract." *See* Exhibit F to the Davidoff Decl., the Notice of Motion to Reopen Case in *Caprita v. The Stella Orton*.  Stella Orton filed a response in opposition to Caprita's motion.  After conduction a hearing on October 19, 2017, Judge Amon

5

denied Caprita's motion to reopen the case. *See* Exhibit G to the Davidoff Decl., the Docket Sheet from *Caprita v. Stella Orton* containing the Minute Order dated October 19, 2017 denying Plaintiff's Motion to Reopen Case.

Despite knowledge pertaining to the mandatory arbitration agreement contained in the ADR Provision of the 2015 MOA, Caprita failed to comply with the requirements that she submit her claims under the ADR procedure.  Instead, she filed a consent to join form in the instant matter on January 10, 2018. Dkt. No. 55.

Opt-In Plaintiff Matveyenkava worked as a home health aide for Stella Orton from approximately 2002 through July 17, 2016.  *See* Exhibit H to the Davidoff Decl., the Declaration of Tatsiana Matveyenkava in Support of Plaintiff's Motion for Collective Action Certification served by Sharon Samuel Ourien, Esq. on the Declarant on March 19, 2018.  Furthermore, Matveyenkava was a member of 1199 from the time she commenced her employment through the date of her termination. *Id.* Like Caprita, Matveyenkava was employed on December 16, 2015, the date Stella Orton and 1199 executed the 2015 MOA.

Based on the foregoing facts applied to the law below, the Named-Plaintiff and the Opt-In Plaintiffs must each arbitrate their claims in accordance with the ADR Provision.

## III.   LEGAL ANALYSIS
.
### A.  The Federal Arbitration Act Liberally Favors Arbitration

The Federal Arbitration Act ("FAA") is "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate."  *Flanagan v. Prudential-Bache Sec., Inc.,* 67 N.Y.2d 500, 505-06 (1986) (internal citations omitted).  Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable,

and enforceable . . . ." 9 U.S.C.S. § 2.  The Court of Appeals for the Second Circuit has made clear

that "[c]ollective bargaining agreements are contracts entailing transactions in commerce," and

therefore, "fall[] within the purview of the Act." *Maryland Cas. Co. v. Realty Advisor Bd. On

Labor Rels.*, 107 F.3d 979, 982 (2d Cir. 1997).

      "There is a strong federal policy favoring arbitration as an alternative means of dispute

resolution."  *Hartford Acc. and Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226

(2d Cir. 2001) (citing *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245,

248 (2d Cir.1991)).  This policy "is particularly strong with respect to arbitration of labor disputes."

*Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) (quoting *New York Hotel

& Motel Trades Council, AFL—CIO v. Hotel St. George*, 988 F.Supp. 770, 774 (S.D.N.Y. 1997)).

To the extent there is any doubt regarding the scope of arbitrable issues, the Court must resolve

that doubt in favor of arbitration.  *See Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed. App'x 480,

481 (2d Cir. 2011) (summary order) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24-25 (1983)).

      To determine whether an action should be dismissed in favor of arbitration, the Court must

consider four factors: "(1) whether the parties agreed to arbitrate; (2) the scope of the arbitration

agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to

be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the

case should be stayed pending arbitration." *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 101

(E.D.N.Y. 2015) (Brodie, J.).  The "party to an arbitration agreement seeking to avoid arbitration

generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v.

Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010); *accord Green Tree Fin. Corp.-Ala. v.

Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ("[T]he party resisting

arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.");

*Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014)

("Whether it argues that arbitration is improper because the arbitration agreement is invalid under

a defense to contract formation, or asserts that the arbitration contract does not encompass the

claims at issue, either way, the resisting party shoulders the burden of proving its defense."

(internal quotation omitted)). "If the party seeking arbitration has substantiated the entitlement by

a showing of evidentiary facts, the party opposing may not rest on a denial but must submit

evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v.*

*Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995).  As demonstrated below, Stella Orton satisfies the

criteria necessary to compel the Named-Plaintiff and Opt-In Plaintiffs' litigate their claims in

arbitration.

      (1)   <u>Wage and Hour Claims are Subject to Arbitration</u>

As an initial matter, the wage and hour claims asserted by Named-Plaintiff and the Opt-In

Plaintiffs are all arbitrable pursuant to Second Circuit case law. It is well-settled that FLSA claims

are arbitrable. *See Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122 (2d Cir. 2017). Statutory

claims are arbitrable unless Congress "has evinced an intention to preclude a waiver of judicial

remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20,

26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991).  No such preclusion exists for FLSA or NYLL

claims. *See Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, 180 F.

Supp. 3d 236, 241 (S.D.N.Y. 2016) ("Numerous courts have held that FLSA claims may be subject

to mandatory arbitration clauses."); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299,

304 (S.D.N.Y. 2010), *aff'd* 408 F. App'x 480 (2d Cir. 2011) ("Congress did not intend for FLSA

claims to be non-arbitrable.").  In the Second Amended Complaint, the claims are limited to the

FLSA and NYLL. *See* SAC. Therefore, the wage and hour claims asserted by Named-Plaintiff and the Opt-In Plaintiffs are the types of claims that may be subject to a mandatory arbitration provision.

        (2)    <u>The Parties Agreed to Arbitrate</u>

The FAA mandates that courts compel arbitration of claims that parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 338-39 (2011) (reiterating that the FAA favors the enforcement of arbitration agreements.).  Under the FAA, a court must compel arbitration and stay the court proceedings when—as is the case here—the parties have agreed in writing to arbitrate an issue or issues underlying the proceedings. *McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 85-86 (2d Cir. 1994).  There is no discretion available to the court; it *must* stay proceedings of an arbitration agreement exists.  *Id.*; *see also*, *e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("§ 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" (quoting 9 U.S.C. § 3)); *N.Y. Typographical Union No. 6 v. Bowne of N.Y. City, Inc.*, No. 90 CIV. 6422 (CSH), 1990 WL 170352, at *7 (S.D.N.Y. Oct. 31, 1990) (compelling arbitration between the parties in accordance with the arbitration provision in the collective bargaining agreement).

It is beyond question that the parties to the 2015 MOA agreed to arbitrate claims asserted pursuant to the FLSA and NYLL.  Indeed, in 2014, Stella Orton and 1199, as the exclusive bargaining representative of Stella Orton's home health care workers, including the Named-Plaintiff and the Opt-In Plaintiffs who were all then-currently employed by Stella Orton, evidenced a clear intention to continue negotiating and to finalize a broad ADR Provision encompassing federal and state statutory claims. *See* Davidoff Decl., <u>Ex. A</u>, at ¶¶ 6-7.  On December 16, 2015,

Stella Orton and 1199 executed the 2015 MOA with an effective date of December 1, 2015. *See* Davidoff Decl., Ex. B.

District Courts within the Second Circuit have repeatedly held that the alternative dispute resolution provision contained within the 2015 MOA entered into by home health care companies and 1199 constitutes an agreement to arbitrate claims such as those asserted in this Action. *See Rodriguez v. New York City Foundation for Senior Citizens Home Attendant Services, Inc.*, No. 15 Civ. 9817 (VEC) (S.D.N.Y. Jul. 14, 2016) ("The CBA and the 2015 MOA expressly demonstrate the parties' agreement to arbitrate all claims asserted by Plaintiff in this action, including claims brought under the FLSA, New York Labor Law and Wage Parity Act."); *Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d at 241 (noting that the 2015 MOA "expressly evinces the parties' intention to arbitrate the precise claims brought here, including all claims brought under the FLSA, New York Home Care Worker Wage Parity Law, and New York Labor Law."); *Matala-De Mazza v. Special Touch Home Care Services, Inc. et al.*, 16-CV-1185 (ARR)(RLM) (E.D.N.Y. Oct. 31, 2016) (holding that an identical 2015 MOA constitutes a "valid arbitration agreement") (copy of Memorandum of Agreement between Special Touch Home Care Services, Inc. and 1199 executed on January 29, 2016 and February 1, 2016 is annexed hereto as Exhibit I to the Davidoff Decl.).

 (3) The Arbitration Agreement Covers the Claims Asserted by Named-Plaintiff and the Opt-In Plaintiffs

Arbitration agreements are intended to be construed as broadly as possible. *See Collins & Aikman Prods. Co. v. Bldg. Sys.,* 58 F.3d 16, 19 (2d Cir. 1995). Any doubt as to the arbitrable issue must be resolved in favor of arbitration. *See Moses H. Cone*, 460 U.S. at 24-25.

  i. *The ADR Provision of the 2015 MOA are Mandatory*

10

Given the Second Circuit's determination that FLSA claims are arbitrable, the claims fall squarely within the scope of the claims subject to the ADR Provision. As noted above, the ADR Provision expressly references three specific statutes: Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law, which the ADR Provision defines as "Covered Statutes."   There can be no doubt based on the Second Circuit's acknowledgement of the arbitrability of the Covered Statutes, as well as the explicit reference to the statutes that the claims asserted in this action are covered by the ADR Provision.

Furthermore, any reasonable reading of the ADR Provision reveals that it is unambiguously mandatory in its scope. Any argument to the contrary is sheer sophistry and is nothing more than "cherry-picking" in order to arrive an unjustifiably narrow reading of the ADR provision, which contravenes the applicable presumption of arbitrability.

Section 1 of the ADR Provision unambiguously states in a "clear and unmistakable" manner that: "***all claims*** brought by either the Union or ***Employees***, asserting violations of or arising out of the Fair Labor Standards Act . . . or New York Labor Law . . . , ***in any manner***, ***shall be subject exclusively***, to the grievance and arbitration procedures described in this Article." *See* Davidoff Decl., Ex. B, at ¶ 8. The provision includes at least three clear phrases that emphasize the mandatory nature of the ADR Provision: (1) "all claims;" (2) "in any manner;" (3) "shall be subject exclusively." *See id.* Section 1 then goes on to indicate that the remaining sections outline the procedures for enforcing the mandatory arbitration provision. *See id.*

While at the conference in this Action held on April 8, the Court suggested that it was inclined to rely on the decision of Judge Jack B. Weinstein in *Abdullayeva v. Attending Homecare Services LLC, d/b/a Attending Home Care*,[2] a case involving a virtually identical arbitration

---

[2] Named-Plaintiff's counsel represents the Plaintiff in the

provision, in which Judge Weinstein held that the arbitration provision in question was <u>not</u> mandatory, despite Section 1's unequivocally mandatory language, primarily because Section 4 contains the word "may" when referring to Plaintiff's ability to file a claim in arbitration. *See* No. 17-cv-5951 (JBW), 2018 U.S. Dist. LEXIS 35552 (E.D.N.Y. Mar. 5, 2018) (appeal pending).

Stella Orton respectfully submits that Judge Weinstein's decision and its underlying rationale, which are in conflict with the other cases that have considered the 2015 MOA (and virtually identical provisions), are flawed and should not be followed. Any reasonable reading of the 2015 MOA's ADR Provision demonstrates that reliance on the *Abdullayeva* decision is misplaced.

First, Stella Orton and 1199 as early as 2014 evinced a desire to create an alternative dispute resolution in connection with changes in federal and state law imposing new obligations on the Employer and exposing Employers to a significantly increased level of litigation. *See* Davidoff Decl., <u>Ex. A</u>, at ¶ 6. In culmination of approximately a year and a half of arms' length collective bargaining, the parties agreed to the ADR Provision contained in the 2015 MOA, which makes unmistakably clear in its very first section it is mandatory in effect. *See* Davidoff Decl., <u>Ex. A</u>, at ¶ 8.

To conclude, as Judge Weinstein does in *Abdullayeva*, that Section 4, which states that an employee "may" submit her claims to arbitration, makes the ADR Provision "permissive" cannot withstand scrutiny. First, when read in context, the permissive "may" is unmistakably referring to the narrow scenario in which the Union declines to pursue the employee's claims. If that occurs, the employee has the option of either pursuing her claim on an individual basis through the mediation/arbitration process *or not at all*. There is no suggestion in Section 4, let alone express

language, permitting an employee to proceed in *Court* nor is such scenario suggested anywhere else in the ADR Provision.

Further, it is clear that Section 4 unmistakably establishes the procedure for the specific scenario in which the Employee has requested in writing that the Union process her grievance and the Union declines to do so.  Even if one were to conclude, as Judge Weinstein erroneously does, that the use of the word "may" in Section 4 somehow renders the ADR Provision "permissive" insofar as it concerns Plaintiff's ability to bypass its arbitration provisions, the very sentence in which the word "may" appears unequivocally states that the employee "may" proceed on her own, whether to arbitration or otherwise, *only* "in the event that an employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union declines to process [such] grievance,"  There is no allegation, evidence or record that Named Plaintiff or the Opt-in Plaintiff's ever fulfilled this *mandatory* condition precedent to proceeding on their own with their claims.  While, contrary to Judge Weinstein's conclusion in *Abdullayeva*, Stella Orton submits that the ADR Provision would nonetheless require that they arbitrate their claims on an individual basis, there is simply no need here to reach that question unless and until Named-Plaintiff and the Opt-in Plaintiff's demonstrate, as it is their burden to carry, that they have each "requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union decline[d] to process" such grievance.

Finally, the use of the word "may" in Section 4 does not suggest that plaintiffs may pursue their claims in court, which would be in direct contravention of Section 1.  Rather, the included such language permitting the employee the option to pursue her claims individually *through the ADR procedure*; otherwise, it would have run the risk of being deemed unenforceable. *See Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 250-251 (E.D.N.Y. 2016) (collecting cases

stating that within the Second Circuit, courts have found collective bargaining agreements unenforceable only where the submission of a statutory claim *to arbitration* is exclusively within the province of the union.).

In sum, the ADR Provision clearly and unmistakably precludes Named-Plaintiff and Opt-In Plaintiffs from pursuing their claims in this Court.

> ii.   *The Named-Plaintiff and Opt-In Plaintiffs' Claims Are Subject to the Mandatory Arbitration Procedure*

The final issue for the Court's consideration concerns whether the Named-Plaintiff's and Opt-In Plaintiff's claims in this action are covered by the ADR Provision.  Opt-In Plaintiffs Caprita and Matveyenkava's FLSA and NYLL claims are unquestionably subject to the mandatory arbitration procedure set forth in the ADR Provision.  As addressed above, both Opt-In Plaintiffs were employed by Stella Orton on December 16, 2015, the date the 2015 MOA was executed by Stella Orton and 1199.  As such, the Opt-In Plaintiffs' bargaining representative agreed to the ADR Provision while the Opt-In Plaintiffs were undeniably still employed by Stella Orton and members of the 1199.  Therefore, their claims are subject to the ADR Provisions and must be arbitrated.

The issue is slightly different for Named-Plaintiff.  She was not an employee of Stella Orton in December 2015.  However, Stella Orton submits that nonetheless her claims are also subject to the ADR Provisions and must be arbitrated.  In *Rodriguez v. New York Foundation for Senior Citizens Home Attendant Services, Inc.* the court faced this same set of facts and granted the defendants' motion to compel arbitration of plaintiff's federal and state wage and hour claims.  *See Rodriguez v. New York City Foundation for Senior Citizens Home Attendant Services, Inc.*, No. 15 Civ. 9817.  Significantly, the plaintiff in that case was employed from July 2014 through June 2015—her employment therefore ended prior to the execution of the 2015 MOA in December

2015. Nevertheless, the *Rodriguez* Court granted the defendant's motion to compel arbitration pursuant to the identical 2015 MOA.

As an initial matter, the *Rodriguez* court noted, "to the extent there is doubt about the scope of arbitrable issues, the court must resolve that doubt in favor of arbitration." *Id.* at 4 (citing *Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed. App'x 480, 481 (2d Cir. 2011) (summary order). The *Rodriguez* court then observed that "The Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate." *Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d at 241(citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98-99 (2d Cir. 1999). Similarly, Named-Plaintiff "cannot point to any temporal limit on arbitrability in the 2015 MOA" particularly in light of the fact that "the language covering the scope of eligible disputes for arbitration provides that '*all*' disputes, arising '*in any manner*' under the relevant statutes must be arbitrated." *See Rodriguez v. New York City Foundation for Senior Citizens Home Attendant Services, Inc.*, No. 15 Civ. 9817 at 7. In light of the foregoing lack of any temporal limitation on the ADR Provision, which is identical to the ADR Provision in the instant matter, the *Rodriguez* Court granted defendant's motion to compel arbitration.

Stella Orton acknowledges that there is case law standing for the proposition that an employee who was not employed at the time the 2015 MOA was executed cannot be subject to the ADR Provision. *See Chu v. Chinese-American Planning Council Home Attendant Program, Inc.* 194 F. Supp. 3d 221 (Jul. 11, 2016). However, reliance on this case here would be misplaced.

In *Chu*, Judge Forrest held that "[r]egardless of the purported retroactivity of the 2015 MOA, and 1199's authority to bargain on behalf of then-current employees, plaintiffs may not be

bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties." *Id.* at 228.  Judge Forrest cites several cases to support her conclusion, including *Meza v. Gen. Battery Corp*, 908 F.2d 1262, 1271 (5th Cir. 1990).  Notably, Judge Forrest's specific reliance on *Meza* demonstrates that her decision is qualified, not unconditional.  She clearly notes *Meza's* instruction that "[a]bsent some evidence that past members expressly or impliedly authorized the union to proceed in their behalf, there can be no presumption that the Union had authority to act in a representative capacity." *Id.*

While as a general proposition, Judge Forrest's decision in *Chu* precludes application of a CBA to "past members," *Metz* advises that where, as here, there is "some evidence" that Named-Plaintiff, as a then-current member of 1199, authorized the union in the 2014 MOA to proceed on her behalf to negotiate and finalize an ADR Provision covering federal and state statutory wage and hour claims, the presumption is that she is covered by the ADR Provision that was the product of those negotiations -- *i.e.,* the ADR Provisions in the 2015 MOA – and that application of those ADR Provisions is mandated.

In this regard, as early as 2014, 1199, the exclusive bargaining representative of Named-Plaintiff, 1199, commenced negotiations with employers within the home health care industry to implement an ADR Provision to address certain claims arising under federal and state law.  This resulted in Stella Orton and 1199 entering into the 2014 MOA in June 2014. The 2014 MOA included a provision addressing the ongoing negotiations for an ADR Provision. *See* Davidoff Decl., Ex. A, at ¶ 6.  The 2014 MOA stated in relevant part:

> The Parties agree that given changes in federal and state law imposing new obligations on the Employer and exposing Employers to significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws.  Accordingly, between the

16

> execution of this Agreement and December 1, 2014, or as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure.  If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

*Id.* Based on the 2014 MOA, *which was executed while Named-Plaintiff was still employed by Stella Orton and a member of 1199*, there exists evidence to demonstrate that Named-Plaintiff impliedly authorized 1199 to proceed on her behalf when adopting the ADR provision.  The 2014 MOA demonstrates that 1199 and Stella Orton were engaged in negotiations to implement an ADR Provision covering federal and state law claims. *See* Davidoff Decl., Ex. A.   As such, Named-Plaintiff's bargaining representative was expressly and actively engaged in the process of creating the ADR Provision that eventually was included in the 2015 MOA.

Moreover, Named-Plaintiff through her bargaining representative even authorized Stella Orton to refer any unresolved dispute concerning the final scope of the ADR Provision itself to final and binding arbitration. *See* Davidoff Decl., Ex. A.  Therefore, as of the effective date of the 2014 MOA, Named-Plaintiff had authorized 1199 to negotiate and finalize, through final and binding arbitration if necessary, the ADR Provision under negotiation.  The fact that no such dispute arose between 1199 and Stella Orton is irrelevant.  It suffices that there is evidence to demonstrate that Named-Plaintiff authorized 1199 to act on her behalf to negotiate and agree to an ADR Provision which would require her to arbitrate her FLSA and NYLL claims.

In light of this evidence, this Court must defer to the grievance and arbitration process in the 2015 MOA and grant Stella Orton's Motion to Compel Arbitration of the Named-Plaintiff's claims despite the fact she was no longer employed on the date that the ADR Provision in the 2015 MOA was executed.

IV.     **CONCLUSION**

Based on the foregoing facts and law, this Court must grant Defendant Stella Orton's

Motion to Compel Arbitration.

Dated: May 10, 2018
        New York, New York

By:     *Philip K. Davidoff*
        Philip K. Davidoff, Esq.
        Jeffrey G. Douglas, Esq.
        FORDHARRISON LLP
        *Attorneys for Defendant*
        60 E. 42nd Street, 51st Fl.
        New York, NY 10165
        Tel: 212-453-5900

WSACTIVELLP:9791036.3

18