UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
MARAL AGARUNOVA, individually and on
behalf of others similarly situated,

                        Plaintiff,                       **MEMORANDUM & ORDER**
                                                          16-CV-0638 (MKB)

                          v.

THE STELLA ORTON HOME CARE AGENCY,
INC.,

                        Defendant.
-----------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

        Plaintiff Maral Agarunova commenced the above-captioned action on her own behalf against Defendant The Stella Orton Home Care Agency, Inc., on February 5, 2016, asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Wage Theft Prevent Act ("WTPA"), and New York Labor Law ("NYLL"), alleging that Defendant engaged in illegal pay practices and wage and hour violations. (Compl., Docket Entry No. 1.) On September 5, 2017, Plaintiff filed an Amended Complaint, (Am. Compl., Docket Entry No. 30), and on October 20, 2017, Plaintiff filed a Class and Collective Action Second Amended Complaint ("SAC"), asserting FLSA and NYLL claims on behalf of herself and other similarly situated home health and personal care aids employed by Defendant, (SAC, Docket Entry No. 41). Two additional Plaintiffs, Alfira Caprita and Tatsiana Matveyenkava (collectively, the "Opt-in Plaintiffs"),[1] subsequently filed Consent to Join forms with the Court. (Alfira Caprita Consent to Join, Docket Entry No. 55-1; Tatsiana Matveyenkava Consent to Join, Docket Entry

---

[1] The Court collectively refers to Agarunova and the Opt-in Plaintiffs as "Plaintiffs."

No. 61-1.)

Currently before the Court are Defendant's motions (1) to compel arbitration, and (2) to stay this action pending resolution of a class grievance. (Def. Mot. to Compel Arbitration ("Def. Mot. to Compel"), Docket Entry No. 82; Def. Mem. in Supp. of Def. Mot. to Compel ("Def. Mem."), Docket Entry No. 82-11; Def. Mot. to Stay, Docket Entry No. 104.) For the reasons discussed below, the Court denies Defendant's motion to compel and motion to stay as to Agarunova, reserves decision on Defendant's motion to compel as to the Opt-in Plaintiffs, and denies the motion to stay as moot as to the Opt-in Plaintiffs.

I. **Background**

  a. **Factual background**

The following facts are taken from the SAC and the declaration of Phillip K. Davidoff and the attached exhibits, filed in support of Defendant's motion to compel.[2] (SAC; Decl. of Phillip K. Davidoff ("Davidoff Decl."), Docket Entry No. 82-1.)

  i. **The parties**

Defendant is a home health care agency whose workers provide home-based aid to

---

[2] The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration and a motion to stay. *See Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187, 192 n.2 (S.D.N.Y. 2018) (considering materials outside of the pleadings for purposes of a motion compel) (citing *Faggiano v. CVS Pharm., Inc.*, 283 F. Supp. 3d 33, 34 n.1 (E.D.N.Y. 2017)); *see also Ramasamy v. Essar Glob.*, No. 11-CV-3912, 2012 WL 1681763, at *2 (S.D.N.Y. May 8, 2012) ("[T]he [c]ourt [can] consider material outside the pleadings on a motion to stay or dismiss in favor of arbitration."); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32–33 (2d Cir. 2001))).

2

individuals in need of medical or other home care assistance. (SAC ¶ 1.) Plaintiffs are health care workers formerly employed by Defendant. (*Id.*) Plaintiffs allege that they, and other members of the putative class, typically worked more than forty hours per week and that Defendant failed to pay them the overtime compensation to which they are entitled. (*Id.* ¶¶ 2, 25–46.) In addition, Plaintiffs allege that Defendant consistently delayed payment of compensation to which they were entitled. (*Id.* ¶¶ 3, 47–54.)

Defendant employed Agarunova from 2008 until April of 2015, (*id.* ¶ 10); Caprita from August 1, 2014 until August 5, 2016, (Caprita Compl. ¶ 10, annexed to Davidoff Decl. as Ex. C, Docket Entry No. 82-4),[3] and Matveyenkava from October 18, 2002 until July 17, 2016, (Decl. of Tatsiana Matveyenkava ¶ 2, annexed to Davidoff Decl. as Ex. H, Docket Entry No. 82-9).

### ii. The dispute resolution provision of the collective bargaining agreement

Defendant's employees are members of 1199SEIU Union Healthcare Workers East (the "Union"), who are covered by a collective bargaining agreement ("CBA") and several memoranda of agreement extending and modifying the CBA. (2014 MOA, annexed to Davidoff Decl. as Ex. A, Docket Entry No. 82-2; 2015 MOA, annexed to Davidoff Decl. as Ex. B, Docket Entry No. 82-3.) On March 1, 2014, Defendant and the Union entered into a memorandum of

---

[3] On November 8, 2016, Caprita commenced an action in this district on behalf of herself and others similarly situated against Defendant alleging violations of the FLSA and NYLL. (Caprita Compl.) After Defendant filed a letter requesting a pre-motion conference indicating that it intended to move to dismiss the action based on the alternative dispute resolution provision in a memorandum of agreement finalized by the Union and Defendant on December 16, 2015, (Pre-Motion Letter, annexed to Davidoff Decl. as Ex. D, Docket Entry No. 82-5), the parties filed a stipulation of discontinuance, (Stip. of Discontinuance, annexed to Davidoff Decl. as Ex. E, Docket Entry No. 82-6), and the case was closed. Caprita later moved to reopen the case. (Mot. to Reopen, annexed to Davidoff Decl. as Ex. F, Docket Entry No. 82-7.) The court denied this motion on October 19, 2017. (Minute Entry dated Oct. 19, 2017, annexed to Davidoff Decl. as Ex. G, Docket Entry No. 82-8.)

agreement (the "2014 MOA") reflecting their intention to continue negotiations in order to implement an alternative dispute resolution ("ADR") provision in light of "changes in federal and state law imposing new obligations on the Employer." (2014 MOA 6.) The 2014 MOA provides in pertinent part:

> The Parties agree that given changes in federal and state law imposing new obligations on the Employer and exposing Employers to a significantly increased level of litigation, it is in the interest of the Union, Employees, and the Employer to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

(*Id.* at 6–7.) Defendant and the Union subsequently agreed to an ADR provision, memorialized in an agreement signed on December 16, 2015 (the "2015 MOA"). Section one of the ADR provision of the 2015 MOA provides in pertinent part:

> The parties agree a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state and local wage-hour and wage parity statutes, all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article . . . . All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq.

(2015 MOA 8.) Sections two and three of the 2015 MOA describe the Union's obligations under the ADR provision. (*Id.* at 9.) Section four provides that "[i]n the event an Employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered

4

Statutes and the Union declines to process a grievance, . . . an Employee solely on behalf of herself, may submit her individual claim to mediation, or following the conclusion of mediation, to arbitration." (*Id*.) Sections five and six provide further procedural frameworks for arbitration. (*Id*. at 10.)

### iii. Defendant's motion to stay based on the filing of a grievance by the Union

On January 7, 2019, Defendant filed a motion to stay this action pending resolution of a class grievance filed by the Union. (Def. Mot. to Stay 1.) On January 2, 2019, the Union filed a "class action grievance on behalf of all of its home care bargaining unit members employed by various agencies," including Defendant, "concerning claims that employees were not properly paid on 24-hour cases and with respect to any other outstanding wage and hour claims arising under the Covered Statutes."[4] (Wage and Hour Grievance 1, annexed to Def. Mot. to Stay as Ex. B, Docket Entry No. 104-2.)

## II. Discussion

### a. Standard of review

The Federal Arbitration Act ("FAA") requires courts to compel arbitration of claims that the parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts consider four factors in order to determine whether an action should be dismissed in favor of arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended

---

[4] Although Defendant attaches a copy of the grievance as an exhibit to its motion to stay, which references "Exhibit A" to the grievance as defining the "Covered Statutes," (Wage and Hour Grievance 1, annexed to Def. Mot. to Stay as Ex. B, Docket Entry No. 104-2), Defendant did not include "Exhibit A" to the grievance in its filing. Defendant argues that the "Covered Statutes" include those under which Plaintiffs' claims are brought in this case. (Mot. to Stay 1.)

those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012) (citing *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)); *see also Garcia v. Golden Abacus Inc.*, No. 16-CV-6252, 2017 WL 2560007, at *2 (S.D.N.Y. June 13, 2017) (same).

Generally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 481 (2d Cir. 2011) (quoting same). When an agreement is clear, "it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (explaining that "[t]he threshold question of whether the parties . . . agreed to arbitrate is determined by state contract law principles"). An employee's right to pursue statutory claims may only be waived by a CBA if that waiver is "clear[] and unmistakable[]." *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009); *see also Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83–84 (2d Cir. 2016) (refusing to compel arbitration where the CBA did not clearly encompass the plaintiffs' statutory claims).

In deciding a motion to compel arbitration, courts apply a similar standard to that applied to a motion for summary judgment and "draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229. The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). In addition, "[a] district court must stay proceedings once it is 'satisfied

that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" *Nicosia*, 834 F.3d at 229 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested.").

### b. Defendant's motion to compel arbitration

Defendant argues that the claims asserted by Opt-in Plaintiffs "are unquestionably subject to the mandatory arbitration procedure" set forth in the 2015 MOA because the Opt-in Plaintiffs were employed by Defendant on December 16, 2015, when the 2015 MOA was signed. (Def. Mem. 14.)  In addition, although acknowledging that "[t]he issue is slightly different" with respect to Agarunova because she was no longer an employee when the 2015 MOA was signed, Defendant nevertheless argues that the 2015 MOA also binds Agarunova because (1) there is no "temporal limit on arbitrability in the 2015 MOA," and (2) there is a "presumption" that Agarunova is covered by the 2015 MOA because she authorized the Union through the 2014 MOA to "proceed on her behalf to negotiate and finalize an ADR [p]rovision." (*Id.* at 14–16.)

Plaintiffs argue that the arbitration provision in the 2015 MOA "is not a mandatory arbitration agreement and therefore does not bar this class action from proceeding in this forum," and, even if it is mandatory, the arbitration provision does not bind Agarunova because she "was not employed by Defendant at the time the provision was adopted." (Pls. Opp'n to Mot. to Compel 3, Docket Entry No. 83 (emphasis omitted).)  In support of Plaintiffs' argument that Agarunova is not bound by the arbitration provision, Plaintiffs contend that "because [Agarunova] was not employed by [Defendant] when the ADR [p]rovision became effective, [Agarunova] was not a party to and the Union did not have authority to bind Plaintiff to the 2015

7

[MOA]." (*Id.* at 16.) Plaintiffs also argue that the 2014 MOA is not sufficient to "vest [the] [U]nion with representative authority to bind former employees" to arbitration. (*Id.* at 17.)

### i. The arbitration provision of the 2015 MOA does not bind Agarunova because she was not an employee when the 2015 MOA was signed

Agarunova is not bound by the agreement to arbitrate because she was neither an employee of Defendant nor represented by the Union as of December 16, 2015, the date of the signing of the 2015 MOA, and is therefore not bound by the 2015 MOA.[5] *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011) ("Under federal law, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *AT&T Techs., Inc. v. Commn'ns Workers of Am.*, 475 U.S. 643, 648 (1986))); *see also Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228 (S.D.N.Y. 2016) (explaining that the union's authority extended only to "then-current employees" and that the plaintiffs could not "be bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties").

Defendant relies on *Rodriguez v. New York Foundation for Senior Citizens Home Attendant Services*, No. 15-CV-9817 (S.D.N.Y. July 14, 2016), to argue that based on the "same set of facts" a district court "granted the defendants' motion to compel arbitration of plaintiff's federal and state wage and hour claims." (Def. Mem. 14.) Defendant argues that the *Rodriguez* plaintiff "was employed from July 2014 through June 2015," and that "her employment therefore ended prior to the execution of the [arbitration agreement] in December 2015." (*Id.* at 14–15.)

---

[5] The 2015 MOA instructs that "all claims brought by either the Union or Employees, asserting violations or arising under the [FLSA] . . . shall be subject exclusively, to the grievance and arbitration procedure described in this Article." (2015 MOA 8.)

8

Nevertheless, the *Rodriguez* court granted the defendants' motion to compel arbitration. (*Id.* at 15.) Defendant argues that in reaching that conclusion, the *Rodriguez* court "observed that . . . in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate." (*Id.*) Defendant argues that because Agarunova "cannot point to any temporal limitation on arbitrability in the 2015 MOA," she must arbitrate her claims. (*Id.*)

Defendant's reliance on *Rodriguez* is misplaced. In *Rodriguez*, there was an arbitration agreement in place at the time of the plaintiff's employment. No. 15-CV-9817, at *2. That agreement provided that "[a] grievance is subject to arbitration," and defined "grievance[]" as "any dispute between the [u]nion (on its behalf or on behalf of any employee) with the employer involving the proper application, interpretation, or compliance with the specific written provision of the [collective bargaining agreement]." *Id.* After the plaintiff in *Rodriguez* left her job, her former union and her former employer modified the collective bargaining agreement to "clarif[y] certain provisions . . . including . . . the scope and application of the company's mandatory arbitration process to address grievances." *Id.* at *2–3. The plaintiff did not dispute that she was bound by an arbitration provision included in the collective bargaining agreement in place at the time of her employment. Instead, she argued that the arbitration provision did not cover claims arising before the agreement was signed but rather only those claims which accrued after the modification to the agreement. *Id.* at *6. In rejecting this argument, the *Rodriguez* court found that the plaintiff was bound by the arbitration provision because she could not "point to any temporal limit on the arbitrability in either [arbitration agreement]." *Id.*

*Rodriguez* provides no support for Defendant's argument. Defendant does not dispute that the collective bargaining agreement did not include *any* arbitration provision until after the

9

termination of Agarunova's employment, unlike the CBA in *Rodriguez* that was in effect at the time of the *Rodriguez* plaintiff's employment. In addition, unlike the *Rodriguez* plaintiff, Agarunova does not only challenge the scope of the claims covered by the 2015 MOA and whether it covers claims accruing before the agreement was finalized, but also disputes that she is bound by the 2015 MOA in the first place.

> ii. **The 2014 MOA does not bind Agarunova to the arbitration provision in the 2015 MOA because the 2014 MOA was only an agreement to agree**

In support of its argument that Agarunova is bound to the arbitration provision of the 2015 MOA, Defendant also argues that the 2014 MOA, which was in place while Agarunova was still employed and which bound the parties to meet in good faith to negotiate an ADR provision, binds Agarunova to the subsequently negotiated arbitration provision in the 2015 MOA. (Def. Mem. 15–17.) In support of this argument, Defendant relies on *Chu*, 194 F. Supp. 3d at 221. (*Id.* at 15–16.)

"[D]espite the strong federal policy favoring arbitration, arbitration remains a creature of contract," and courts must therefore "decide whether the parties to a contract have agreed to arbitrate disputes." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, --- U.S. --- , --- , 139 S. Ct. 524, 529 (2019) ("[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."); *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) ("[A] party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit." (quoting *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004))). The question of whether parties have agreed to arbitrate "is governed by state-law principles of contract formation." *Starke*, 913 F.3d at 288; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66,

10

74 (2d Cir. 2017) ("State law principles of contract formation govern the arbitrability question." (quoting *Nicosia*, 834 F.3d at 231)). "To create a binding contract under New York law, the parties must provide a 'manifestation of mutual assent sufficiently definite to assure that they are truly in agreement with respect to all material terms.'" *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 199 (2d Cir. 2019) (quoting *Stonehill Capital Mgmt., LLC v. Bank of the W.*, 28 N.Y.3d 439, 448 (2016)) (alterations omitted); *see also Starke*, 913 F.3d at 288 ("It is a basic tenet of contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'" (citation omitted)). Further, under New York law, "[t]he mere expectation that a contract will be entered into does not constitute a contract." *NRP Holdings, LLC*, 916 F.3d at 201 (quoting *Papa v. N.Y. Tel. Co.*, 72 N.Y.2d 879, 881 (1988)). In other words, a "mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (citation omitted); *see also Hudson & Broad, Inc. v. J.C. Penney Corp., Inc.*, 553 F. App'x 37, 39 (2d Cir. 2014) (explaining that "mere 'agreements to agree' will not constitute enforceable contracts under New York law"); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (stating that an agreement to agree merely "buys a party an assurance that the transaction will falter only over a genuine disagreement" (citation omitted)); *Brown v. Cara*, 420 F.3d 148, 151 (2d Cir. 2005) (A "preliminary agreement is not enforceable as to the ultimate contractual goal contemplated in the document, [though] it is enforceable as an obligation between the parties to negotiate in good faith within the framework of the agreement.").

The 2014 MOA states in pertinent part that "the parties shall meet in good faith to negotiate . . . an alternative dispute resolution procedure." (2014 MOA 6–7.) The 2014 MOA bound the parties only to "negotiate in good faith"; it did not bind the parties, or those

11

represented by the parties, to the "ultimate contractual objective." *Vacold LLC v. Cerami*, 545 F.3d 114, 124 (2d Cir. 2008) (noting that preliminary agreements with open terms "do not commit the parties to their ultimate contractual objective" (alteration and citation omitted)); *Aventis Envtl. Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 511 (S.D.N.Y. 2015) ("It is classic hornbook law that a mere 'agreement to agree' or 'a contract to contract' in the future is a legally unenforceable provision."); *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 311 (S.D.N.Y. 2006) ("As a general rule, a contract requires a final meeting of the minds; mere 'agreements to agree' are not binding."). The 2014 MOA, therefore, did not bind Agarunova to the ultimate contractual objective — an agreement to arbitrate future disputes, as set forth in the 2015 MOA.

Defendant "acknowledges that there is case law standing for the proposition that an employee who was not employed at the time [that an agreement] was executed cannot be subject to [that agreement]." (Def. Mem. 15 (citing *Chu*, 194 F. Supp. 3d at 221).) For example, in *Chu*, 194 F. Supp. 3d at 221, a district court held that a union's authority to bargain only extended to then-current employees. (Defs. Mem. 15–16.) Defendant argues, however, that the *Chu* court cited to *Meza v. General Battery Corporation*, 908 F.2d 1262, 1271 (5th Cir. 1990), and noted in a parenthetical that the *Meza* court found that "[a]bsent some evidence that past members expressly or impliedly authorized the union to proceed in their behalf, there can be no presumption that the [u]nion had authority to act in a representative capacity." (Defs. Mem. 16.) Relying on this parenthetical in *Chu*, quoting a 1990 decision by the Fifth Circuit, Defendant argues that because in this case "there exists evidence to demonstrate that [Agarunova] impliedly authorized [the Union] to proceed on her behalf when adopting the ADR provision," *i.e.*, the 2014 MOA, she is required to arbitrate her claims. (*Id.* at 17.)

Even if *Meza* were controlling, which it is not, there is insufficient evidence that

12

Agaunova authorized the Union to bind her to the subsequent arbitration provision in the 2015 MOA. Agarunova authorized the Union to "meet in good faith to negotiate . . . an alternative dispute resolution procedure." (2014 MOA 6–7.) As explained above, such an agreement does not bind the parties to their ultimate contractual objective, *Brown*, 420 F.3d at 151, but instead "buys a party an assurance that the transaction will falter only over a genuine disagreement," *L-7 Designs, Inc.*, 647 F.3d at 430 (citation omitted). There is therefore no legal support for Defendant's argument that because Agarunova was an employee when the Union signed the 2014 MOA, she gave the Union the authority to bind her to the ADR provision in the 2015 MOA even though she was no longer represented by the Union at the time the parties entered in to the 2015 MOA. Accordingly, the Court denies Defendant's motion to compel as to Agarunova.

### iii. The Opt-in Plaintiffs

Defendant argues that the Opt-in Plaintiffs were parties to the 2015 MOA and are therefore bound by the arbitration provision in that agreement. (Def. Mem. 14.) In particular, Defendant argues that "[i]t is beyond question that the parties to the 2015 MOA agreed to arbitrate claims asserted pursuant to the FLSA and NYLL" and the 2015 MOA "is unambiguously mandatory in scope." (*Id.* at 9.) Defendant also argues that although in a recent case "involving a virtually identical arbitration provision," the district court held that arbitration was not mandatory, that decision is "in conflict with . . . other cases," is "flawed," and "should not be followed." (*Id.* at 11–13); *see Abdullayeva v. Attending Homecare Servs., LLC*, No. 17-CV-5951, 2018 WL 1181644 (E.D.N.Y. Mar. 5, 2018).

Plaintiffs argue that although Defendants employed the Opt-in Plaintiffs in December of 2015 when the Union and Defendant executed the 2015 MOA, the arbitration provision is "at best unclear as to whether employees must arbitrate their claims or, more correctly, the clause

13

provides only for voluntary arbitration at the employee's request." (Pls. Opp'n to Mot. to Compel 6.) Plaintiffs also argue that *Abdullayeva* is persuasive and should be followed. (*Id.* at 9–10.)

The parties agree that the arbitration provision in the 2015 MOA is identical to the provision in the memorandum of agreement at issue in *Abdullayeva*. In *Abdullayeva*, the district court held that "[t]he arbitration provision . . . is confusing [and] . . . does not clearly require [the plaintiff] to arbitrate her claims, so she can pursue them in court." *Abdullayeva*, 2018 WL 1181644, at *6. Because *Abdullayeva* is currently pending on appeal before the Second Circuit, the Court reserves decision on the motion to compel with respect to the Opt-in Plaintiffs' claims pending the Second Circuit's decision in *Abdullayeva*.

  c. **Defendant's motion to stay**

Defendant argues that "now that Plaintiffs' Union has filed a class-wide grievance pursuant to the terms of the mandatory ADR [p]rovision covering all of Plaintiffs' wage and hour claims pending in this action," the Court "must stay the current action and allow Plaintiffs' claims to proceed in the forum agreed to by the parties." (Def. Mot. to Stay 2.)

Plaintiffs argue that Defendant's motion to stay should be denied because (1) "the issues presented by the stayed grievance are tangential to this case"; (2) "the stayed grievance is filed on behalf of the [U]nion's 'home care bargaining unit members' and thus cannot include former employees like [Agarunova]"; and (3) the Union "cannot adequately represent the Class." (Pls. Opp'n to Mot. to Stay 1, Docket Entry No. 105.)

The grievance filed by the Union is brought "on behalf of [the Union's] home care bargaining unit members employed by various agencies," including Defendant. (Wage and Hour Grievance 1.) Defendant does not dispute that the grievance is not brought on behalf of

14

Agarunova, since she was neither a "home care bargaining unit member" nor "employed" by Defendant at the time the grievance was filed on January 2, 2019. Accordingly, the grievance is not filed on Agarunova's behalf and Defendant's motion to stay as to Agarunova is denied.

In addition, because the Court stays this action as to the Opt-in Plaintiffs pending resolution of *Abdullayeva*, the motion to stay as to the Opt-in Plaintiffs is denied as moot.

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's motion to compel arbitration and motion to stay as to Agarunova, reserves decision on Defendant's motion to compel as to the Opt-in Plaintiffs, and denies the motion to stay as moot as to the Opt-in Plaintiffs.

Dated: March 25, 2019
       Brooklyn, New York

                                SO ORDERED:

                                     s/ MKB
                                MARGO K. BRODIE
                                United States District Judge